In the Matter of Joseph Quittner, as Chairman of Tenants Committee, for and on Behalf of Himself and 15 Other Tenants Similarly Situated in Premises 929 Park Avenue, New York City, Appellant, *v.* Robert E. Herman, as State Rent Administrator, Respondent, and Abraham Hirschfeld, Intervenor-Respondent.

First Department, December 14, 1961.

*Jacob Shientag* of counsel (*Daniel M. Shientag* with him on the brief; *Lane & Logan,* attorneys), for appellant.

*Harold Zucker* of counsel (*Jacob B. Ward* with him on the brief), for respondent.

*Copal Mintz* of counsel (*Hyman W. Sobell* with him on the brief), for intervenor-respondent.

*Per Curiam.* The principal question on this appeal is whether the State Rent Administrator may use a recent sale price of an apartment building as a basis for fixing maximum rents or whether the current assessed valuation must be used.

From the complex of facts and involved proceedings there emerges the one prominent fact that the landlord seller allowed an unusual number of vacancies to accumulate prior to the recent sale, thereby making the building especially suitable for a resale to a co-operative. It is virtually conceded that the sale

price was enhanced because of the number of vacancies. Decision of the principal question necessarily requires a determination whether the sale involved " special circumstances " which affected the price, within the meaning of section 4 (subd. 4, par. [a], cl. [1]) of the Emergency Housing Rent Control Law (L. 1946, ch. 274, as last amd. by L. 1961, ch. 337).

Quite clearly, in accordance with this court's holding in *Matter of Payson* v. *Caputa* (9 A D 2d 226), the Administrator was not required to treat the sale in question as a " sale to co-operative ", or equivalently, as a sale to a " conduit " for a co-operative. Even if he had, however, he could have found that the special circumstances did not affect the price. Unless the purchaser's interest in reselling the property to a co-operative could be shown to have distorted the price beyond the fair market value, the sale price may not be deemed " affected " (*Matter of Payson* v. *Caputa, supra,* p. 234).

The fact that the seller designedly enhanced the value of the property and made it especially adaptable for conversion to the co-operative form of ownership by allowing the vacancies to remain unfilled does not mean that the increased value should not be recognized as proper market value. If, in fact, a vacant building is worth more than a full one, the greater value is nonetheless a proper market value. So long as the status of the building has not been achieved by unlawful means, the status is real, and the statute mandates use of a purchase price not infected by distortive circumstances.

It is conceded that the seller did not violate any provision of the rent control laws in permitting vacancies to accumulate. Indeed, subdivision 4 of section 10 of the rent control law expressly provides that " Nothing in this act shall be construed to require any person to offer any housing accommodations for rent " (Emergency Housing Rent Control Law, § 10, subd. 4; L. 1946, ch. 274, as last amd. by L. 1961, ch. 337). Nor, on this record, is there any serious contention that the price paid for the property was appreciably higher than other potential buyers would have paid in an arm's-length transaction. Consequently, as long as market value is reflected by the purchase price, and the seller has not unlawfully enhanced market value, there is no warrant for disregarding the sale price merely because the parties to the sale, past landlord and prospective landlord, have not been imbued with the spirit of rent control in managing the property.

In light of the expressions in *Matter of Realty Agency* v. *Weaver* (7 N Y 2d 249, 254) and *Matter of Ackerman* v. *Weaver* (6 N Y 2d 283, 287), it may be that the Administrator is bound

to accept the sale involved, even if special circumstances are present, as a valuation base because it is not among the excepted transactions denominated in the statute. Whether the Administrator is so limited need not now be decided, however, since the record now before the court, and the Rent Administrator has so found, does not demonstrate that any special circumstances improperly inflated the sale price, i.e., "yielded a distorted reflection of value" as noted by the Court of Appeals in the *Realty Agency* case (*supra*, p. 254).

The Rent Administrator unquestionably violated a prior order of Special Term, by proceeding to compute the value of the property on the basis of the sale price. Although an administrative agency is generally free, in a proper case, to exercise its full discretion anew when proceedings are remanded to it, it may not do so to the extent that an order explicitly limits such discretion (1 N. Y. Jur., Administrative Law, § 209). It is recognized, however, that the Administrator misunderstood the effect of the order. Nevertheless, the tenants, having understandably declined to offer further proof to the Administrator on the very issue which Special Term had foreclosed, should now be given an opportunity to offer proof, if they can, to show that the sale price was affected by relevant special circumstances.

Accordingly, the order appealed from should be modified, without costs, and the provisions in the order inconsistent herewith should be stricken and the proceeding should be remanded to the Administrator to take further proof, in accordance with the views of this court, on the issue of whether the pertinent sale involved "special circumstances" which affected the price, and, if necessary, to recompute the maximum rents on the basis eventually determined to be applicable. Settle order.

McNally, J. (dissenting). I dissent and vote to affirm.

In a proceeding under section 4 (subd. 4, par. [a], cl. [1]) of the Emergency Housing Rent Control Law and subdivision 5 of section 33 of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission, the intervenor appeals from the order entered September 21, 1961 annulling the order of the State Rent Administrator issued May 5, 1961 and remanding the matter with the direction to apply the assessed value in the determination of the application.

The order herein entered March 2, 1961 directed the use of the current assessed valuation. Respondent State Rent Administrator applied for leave to appeal from the order of March 2, 1961, and said application was denied on March 29, 1961. The intervenor did not apply for leave to intervene until May 15, 1961 when it cross-moved for such relief upon being served with

the order to show cause why the order of the State Rent Administrator issued May 5, 1961 should not be vacated and pending determination thereof staying the intervenor from collecting the increased rents resulting therefrom. The instant appeal of the intervenor is limited to the order of September 21, 1961; it does not purport to seek a review of the order entered March 2, 1961.

The holding of the majority, however, seems to nullify the order of March 2, 1961, not under review at this time. Moreover, our holding in *Matter of Brown, Harris, Stevens* v. *Abrams* (2 A D 2d 376) precludes any such review.

On the undisputed facts, the sale price relied on is not "unaffected by special circumstances", within the meaning of section 4 (subd. 4, par. [a], cl. [1]) of the Emergency Housing Rent Control Law, in that the seller prepared the property for sale to a co-operative and the intervenor knowingly purchased the property for such purpose and the purchase contract obligated the seller pending closing of title not to rent vacant apartments. At the time of contract 14 apartments were vacant because of the seller's policy since 1954 of refusing to rent vacant apartments. At the time of taking title there were 16 vacant apartments.

The policy of not renting vacant apartments in the circumstances of this matter is destructive of the underlying purpose of the Emergency Housing Rent Control Law to alleviate the acute shortage of dwellings and to prevent "unjust, unreasonable and oppressive rents" as expressed in section 1 of the statute. "[T]he primary purpose of the act is to prevent undue rent increases". (*Matter of New York Univ.* v. *State Rent Comm.*, 304 N. Y. 124, 129.) Controlled accommodations may be withdrawn from the rental market. (*Ibid*; Emergency Housing Rent Control Law, § 10, subd. 4.) However, a sale price resulting from the inflationary tendency of a withdrawal of housing accommodations, concurred in and projected by the intervenor, towards the end of effectuating a co-operative may not be availed of as a basis for "fair and equitable" rent controls within the meaning and the purpose of the act. (*Id.* § 4, subd. 4, par. [a], cl. [1].)

The instant case is unlike *Matter of Payson* v. *Caputa* (9 A D 2d 226). In *Payson* there was no evidence of a policy of not renting vacant apartments prior to contract and the seller did not agree to refrain from renting vacant apartments pending the closing of title. The fact that the purchaser in *Payson* intended to convert to a co-operative did not affect its sale price which was the result of competitive bidding in an open market.

Here the seller manipulated the property for the specific purpose of a sale to a co-operative and the intervenor joined in said plan thereby contributing to and effectuating the type of sale which the statute provides shall not be considered in arriving at the base valuation.

BREITEL, J. P., RABIN, STEVENS and EAGER, JJ., concur in Per Curiam opinion; McNALLY, J., dissents and votes to affirm in opinion.

Order entered on September 21, 1961 modified, without costs, and the provisions in the order inconsistent with the opinion Per Curiam of this court filed herein are stricken and the proceeding remanded to the Administrator to take further proof, in accordance with the views of this court, on the issue of whether the pertinent sale involved "special circumstances" which affected the price, and, if necessary, to recompute the maximum rents on the basis eventually determined to be applicable. Settle order on notice.