In the Matter of PEPSI-COLA COMPANY, Respondent, *v.* TAX COMMISSION OF THE CITY OF NEW YORK, Appellant.

First Department, June 11, 1963.

*James J. McGowan* of counsel (*Edward J. McLaughlin* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for appellant.

*Alfred H. Hetkin* of counsel (*Hetkin, Barshay & Hetkin,* attorneys), for respondent.

EAGER, J. By this proceeding the petitioner attacked the assessed valuation of the property owned by it and situate at 500 Park Avenue, on the southwest corner of Park Avenue and 59th Street. The petitioner, following its purchase of this property in 1956, improved the same by the erection thereon of a new building, which was completed in December, 1959. It was first assessed for the tax year 1960–61 as fully improved and it is with this assessment that we are principally concerned here.

Involved is a modern, 11-story air-conditioned office building, of reinforced concrete construction set on concrete piles and having aluminum and glass curtain wall construction on its two main facades. The building, which is unusually distinctive and individualistic in appearance, is set back approximately 14 feet on Park Avenue and 34 feet on 59th Street to provide on said sides a promenade and plaza ornamented with plants and shrubbery. The first floor of the building consists mainly of an elaborate and decorative lobby, the top floor is of penthouse style containing suites of offices especially laid out and fitted for use by the top executives of a large organization, and the floors in between are so laid out that they may serve as offices for the several departments of the organization.

The property is located on the fringe of an expanding midtown Manhattan area, which has experienced a substantial increase in new commercial building construction in recent years and in which land values have increased progressively for many years. The site for the building, a plot of 100 feet by 125 feet, was purchased by petitioner from the City of New York at public auction in June, 1956 for the high bid price of $2,000,000 and the actual cost of construction of the building was in excess of $5,500,000. The city's expert appraised the land as worth $1,517,500 and estimated the reconstruction cost, less depreciation of the building to be $4,800,000. Petitioner's expert arrived at a land value of $1,175,000; and by the capitalization method, fixed the economic value of the new building at approximately

$1,000,000, for a total appraisal of land plus building of $2,175,000 for the tax year 1960–61.

The total assessment for the said tax year 1960–61 was $4,700,000 with value of land placed at $1,500,000 and the building at $3,200,000. Special Term reduced this assessment to $3,950,000, arriving at a reduction of $50,000 for the land and $700,000 for the building.

This building was constructed by the petitioner, a well-known soft-drink company, as a world headquarters for use and occupancy in management of its operations here and abroad. It is so used, the petitioner occupying the entire building for its business purposes, with the exception of the second, third and fourth floors, which are rented out for independent occupancy.

Because the building was designed principally for the use of a single tenant there are, as afore-noted, certain unusual features of construction, which distinguish the building from one normally built for general commercial occupancy. The ground floor and basement are not available for ordinary commercial uses in that said floor is constructed solely for reception and lobby use. Also, there are no interior halls or corridors in the floors above the lobby and the elevators empty directly into the open upper floor areas. So, it is obvious that the building is best suited for occupancy by a single main tenant and is not readily adaptable for use as an ordinary income-producing commercial building, that is, with the ground floor and basement area devoted to bank or retail store occupancy and with the upper floor areas utilized for multiple office purposes.

The building, however, was in all respects a suitable and proper improvement in the locality and for the site. In ascertaining true value for assessment purposes, it is immaterial that this building is not an adequate improvement in the sense that it does not utilize the land to develop the highest possible commercial income. (See *Matter of Seagram & Sons* v. *Tax Comm.*, 18 A D 2d 109, 117.) The owner is to be assessed on the basis of the building that he erected, and as it existed on the taxable status date, and not on what he could have erected. From an assessment standpoint, it should not be controlling that petitioner has built with dignity and not with commonness; and it should be irrelevant that petitioner chose to set back the building to provide an open space promenade and plaza and to keep the height thereof within aesthetic limits; rather than to make maximum use of the available land area to incorporate the optimum cubic footage in the structure.

Furthermore, this building is not a " specialty ", that is, a structure " designed for unique purposes " to be valued as

such. (See *Matter of Semple School for Girls* v. *Boyland*, 308 N. Y. 382, 389.) Nor is it in the same category as the Seagram Building, that is, a newly-erected structure built especially for prestige and advertising value as well as for the headquarters use of its owner. (See *Matter of Seagram & Sons* v. *Tax Comm.*, *supra*.)

Fundamentally, the assessment of this property, land and improvements, is to be at '' the full value thereof '' (see Real Property Tax Law, § 306), and that is, the price at which the property, with the improvements, would sell under ordinary circumstances. (See Administrative Code of City of New York, § 158–1.0; *People ex rel. Parklin Operating Corp.* v. *Miller*, 287 N. Y. 126, 129; *People ex rel. Gale* v. *Tax Comm.*, 17 A D 2d 225.)

The ascertainment in a given case of '' full value '', which is equated to market value, necessarily depends upon the proper consideration and weighing of many elements which would have a bearing and influence on market value. Relevant factors, which must receive consideration if properly proven, as pointed out many times, are the location and accessibility of the property, conditions in the neighborhood which affect value of the property therein, the nature of the buildings and type of construction, the age of the buildings and state of repair, cost of construction of buildings on present-day basis less depreciation, bona fide price in connection with a sale of the premises during or reasonably near the tax years, a bona fide rent received for the premises or portion thereof during or reasonably near the tax years, the reasonable rental value of the premises or any portion thereof, and prices paid on bona fide sales of comparable property during or reasonably near the tax years. (See, for instance, *Heiman* v. *Bishop*, 272 N. Y. 83, 88; *People ex rel. Four Park Ave. Corp.* v. *Lilly*, 265 App. Div. 68; *People ex rel. Clinton Trust Co.* v. *Sexton*, 258 App. Div. 1082, 1083.)

The price paid by the petitioner in 1956 for the site of the building furnishes cogent evidence of land value, although by no means conclusive. (*Matter of City of New York* [*Maxwell*], 15 A D 2d 153, 162; *Matter of Ed Guth Realty* v. *Gingold*, 16 A D 2d 372.) And, where, as here, we have a modern type building, newly constructed, the cost of construction thereof is '' a highly significant indicator of value '' of the building (*Matter of Seagram & Sons* v. *Tax Comm.*, 18 A D 2d 109, 114, *supra*). But this, too, is only one factor to be considered in ascertaining market value of this type of property. The building being neither a '' specialty '' nor a '' prestige type structure '', the cost of construction thereof is accepted only as

maximum value. (See *Matter of Semple School for Girls* v. *Boyland,* 308 N. Y. 382, *supra*; *Matter of Seagram & Sons* v. *Tax Comm., supra.*) So, the proper basis for valuation of the building is not alone replacement cost, as claimed by the city's expert; and we are required to reject his appraisal insofar as it may be considered to be based upon such cost. (See *Matter of Semple School for Girls* v. *Boyland, supra*; *Matter of City of New York* [*Maxwell*], 15 A D 2d 153, 171, *supra.*)

In this case, too, as generally in the case of all commercial property, the fair rental value of premises is a most important factor for consideration in determining "the full value" thereof for tax assessment purposes. (See *People ex rel. Gale* v. *Tax Comm.,* 17 A D 2d 225, 230, *supra,* and cases cited.) In this connection, the bona fide rental paid by a tenant for his use of the premises or portion thereof is highly significant. (See *Matter of City of New York* [*Maxwell*], *supra*; *People ex rel. Gale* v. *Tax Comm., supra,* p. 230, and cases cited.)

The theory in the use of the capitalization method is that property should be worth a sum capitalized on basis of its reasonable earning capacity. So, in the final analysis, the appraisal of real property by this method depends upon the ascertainment of the fair rental value for the use of the premises for a purpose for which it is used or reasonably adaptable for use. In fixing reasonable rental value, due consideration must be given "to the special features contained in the building". (*Matter of City of New York* [*Maxwell*], *supra,* p. 171.)

Where, as here, a building is designed and constructed for use principally by a single business concern for its main office headquarters for large scale and widely extended business activities, then due consideration must be given to the rental value of the building for such use. It is well known that many large corporations seek to use New York City as a focal point for management of their commercial activities, and, therefore, it would appear that the reasonable rental value of these premises for the home office purpose for which it is best suited, may be shown by traditional methods. And, it may be relevant to show by "proper accounting proof, that businesses of this character commonly allot a specified portion of their receipts to rent." (See *Matter of City of New York* [*Kramer Realty*], 16 A D 2d 148, 150.)

In any event, the rental value assigned to the premises by the petitioner's expert as the basis for his appraisal was not properly supported. He assigned no rental value to the street level floor and his finding of reasonable rental value for the premises was predicated mainly upon the estimated rental

income of the several floors above the ground floor for general office purposes, taking into consideration the rents which were being paid by the third-party tenants for the second, third and fourth floors of the building. "On this view the rental value assigned to the taxpayer's space is understated, if there is merely charged to that space the prorated value assigned to other tenants. And, undoubtedly too, there is value to be assigned to the building as a whole, independent of commercial rental income, since the building, qua building, is also held for business purposes, unrelated to the receipt of commercial rental income." (*Matter of Seagram & Sons* v. *Tax Comm.*, 18 A D 2d 109, 117, *supra.*)

There is no satisfactory explanation in the record for the wide disparity here between the structural value and the estimated rental value assigned by petitioner's expert for the property. (See *Matter of Seagram & Sons* v. *Tax Comm.*, *supra*, p. 116.) The reason may be a failure to give due consideration to the reasonable rental value of the premises for the purpose used. In any event, it is clear that his appraisal is not realistic and does not reflect true value.

Ultimately, our function here is to determine whether or not the record supports the determination of the trial court in its reduction of the assessment. (See *People ex rel. Wallington Apts.* v. *Miller*, 288 N. Y. 31.) This court is not obligated to fix the precise value of the property unless it finds that the value is less than the value fixed by the Assessors. (*Matter of Seagram & Sons* v. *Tax Comm.*, *supra*, p. 110.) If the record supports a finding that the total value of the property, land and improvements is at least equal to the total assessment, it is immaterial whether or not the land value and the building value, as separately stated, are in such amounts as would be fixed by this court. (See Real Property Tax Law, § 502 [formerly Tax Law, § 21, subd. 3]; *People ex rel. Harway Improvement Co.* v. *Berry*, 229 App. Div. 565; *Matter of Irving Trust Co.* v. *Tax Comm.*, 7 A D 2d 726.)

Upon due consideration of all relevant factors, so far as developed by the evidence in the record here, it appears that the reduction of the assessment for the year 1960–61 as directed by the trial court, is not supported. This would ordinarily call for a reinstatement of the assessment by this court. But, because the parties were in some misapprehension as to the proper methods to be followed by their experts in the making of their appraisals, they have failed to properly and fully develop all factors which are relevant to the question of the value of this property for assessment purposes for the year

1960–61. Consequently, in the interests of justice, the order of Special Term should be modified to remand for a new trial with respect to the issues appertaining to the assessment for the said tax year, and the order should be otherwise affirmed, without costs.

BREITEL, J. P., McNALLY, STEVENS and STEUER, JJ., concur.

Order, entered on or about September 5, 1961, unanimously modified, in the interests of justice, to the extent of remanding the matter for a new trial with respect to the issues appertaining to the assessment for the tax year 1960–61, and, as so modified, the order is affirmed, without costs.