Chief Judge Breitel.
In a tax certiorari proceeding, petitioner G.R.F., Inc., owner of Gimbel’s department store in the Roosevelt Field Regional Shopping Center, seeks a reduction in the assessment of the land and building owned by it. Supreme Court granted the reduction, in part; the Appellate Division affirmed; and the Nassau County Board of Assessors appeals.
There should be an affirmance. The trial court, in reducing the assessments, rejected both the value arrived at by petitioner, using exclusively a capitalization of income approach, and the value urged by the Board of Assessors, using a computation based only on reproduction cost less depreciation. For the reasons to be discussed, the rejection of each theory of valuation as an exclusive basis was not error, and the adaptation of both on economic analysis was appropriate.
The Gimbel’s store was built in 1962. The owner and developer of Roosevelt Field, in return for Gimbel’s agreement to construct and operate a department store in the shopping center, conveyed the necessary land to Gimbel’s. The owner-developer had previously done the excavation and foundation work and now agreed to contribute $1,320,139.48 toward the building construction. As part of the arrangement the developer guaranteed Gimbel’s minimum gross annual sales of $14,000,000 and agreed to pay Gimbel’s 3% of the deficit. Gimbel’s agreed to pay parking and tunnel fees of Vz% of the excess of sales over $14,000,000. Most of the remainder of the vast shopping center consists of retail stores rented by Roosevelt Field to individual merchants. At issue are the tax assessments only of the Gimbel’s property for the period of 1963 to 1972.
Capitalization of income generally provides an acceptable and, in the absence of market data, a preferred method of valuing rental property (see Matter of Pepsi-Cola Co. v Tax Comm., 19 AD2d 56, 60). Where, however, a building is held for the owner’s own use, and especially where the building bears the owner’s name, income capitalization may not adequately reflect the property’s total value (Matter of Seagram & Sons v Tax Comm., 18 AD2d 109, 112, 116, affd 14 NY2d 314, 318; Matter of Pepsi-Cola Co. v Tax Comm., 19 AD2d 56, 61, supra). Thus, without equating Gimbel’s situation with the one existing in the Seagram case, Gimbel’s presence in Roosevelt Field, a large and prestigious shopping center, may have *514 value apart from the income that use of the subject property would bring.
At the same time, an assessment based exclusively on reproduction cost less depreciation would seriously overvalue the subject property. The cost approach, which, among other things, ignores entirely factors like functional obsolescence, is useful principally, apart from specialties, to set a ceiling on valuation (see Matter of 860 Fifth Ave. Corp. v Tax Comm., 8 NY2d 29, 32; see, also, 2 Orgel, Valuation Under Eminent Domain, § 199).
Construction of the Gimbel’s store would not have been justified, economically, on the basis of the expected return from the Gimbel’s store alone. Instead the improvements were justified in part by Gimbel’s status as a "flagship” store, drawing shoppers to the remainder of the shopping center. The developer, eager to increase the rental value of the smaller stores, subsidized the construction of Gimbel’s and for the same reason would have charged a lower rental to a "flagship” store, if the property had been rented, as is usually the case.
Thus, to the extent that a flagship store is an attraction to the satellite tenants, part of the cost of construction may reflect not value to the flagship store, but value to the remainder of the typical shopping center. That value, in turn, is reflected in the increased rental value of the shopping center property other than the flagship store, and, presumably, in the tax assessment of the whole shopping center property. On this view, it would be inequitable to assess the Gimbel’s property on the basis of reproduction cost less depreciation. The problem, obviously, arises in this case because of the separate ownership of the flagship store from that of the satellite rented stores.
Presented only with these incompatible theories of valuation, flawed if either be used exclusively, the trial court reached an adjustment by treating each basis as a factor in a balancing analysis (see Matter of Pepsi-Cola Co. v Tax Comm., 19 AD2d 56, 59, supra). On the record made at trial, the trial court was entitled to select one of the theories of valuation as primary, here the reproduction cost theory, but to adjust it by recognizing the influence of the income capitalization computation. Hence, the balancing adjustment was not error.
*515 Logic and economic analysis suggest the incongruity of combining what are on their face incompatible theories of valuation, and such combinations should be avoided where possible. Pragmatism, however, requires adjustment when the economic realities prevent placing the properties in neat logical valuation boxes (see Matter of 860 Fifth Ave. Corp. v Tax Comm., 8 NY2d 29, 30-32, supra; Matter of Pepsi-Cola Co. v Tax Comm., 19 AD2d 56, 59-62, supra). These pragmatic considerations are present in this case, and in that respect the affirmed findings of fact are demonstrably sound. Thus, an adjustment, derived it is true, from an incompatible theory of valuation, if rationally and discriminately applied, is in the exceptional case acceptable, because the adjustment, properly factored, comes closest to establishing the true market value, the ultimate basis, if determinable, for assessment.
The exceptional case arises, in large measure, when no one of the accepted but alternative (and therefore to some extent incompatible) theories of valuation will account for the divers economic purposes served by a single property (Matter of Seagram & Sons v Tax Comm., 18 AD2d 109, affd 14 NY2d 314, supra; Matter of Pepsi-Cola Co. v Tax Comm., 19 AD2d 56, supra; Matter of 860 Fifth Ave. Corp. v Tax Comm., 8 NY2d 29, supra). Not to be confused with a major adjustment of the kind involved in this case are adjustments for "special features” in a building otherwise capable of valuation on any single theory or method (cf. Matter of City of New York [Lincoln Sq. Slum Clearance Project], 15 AD2d 153, 170-172, affd 16 NY2d 497). Nor should it be said that all of the legitimate exceptions have been considered in this analysis, as for example where an ineffecient enterpriser is involved; but it can be said that before there are adjustments based on what are otherwise incompatible theories of valuation, the discovery and use of the exception must be demonstrated to be legitimate in economic theory.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.