■ PRECISION DYNAMICS CORP., Appellant, v TAX COMMISSION OF THE CITY OF NEW YORK, Respondent. — Judgment of the Supreme Court, New York County (Mangan, J.) entered June 23, 1981 fixing the assessed valuation of property owned by petitioner is affirmed, without costs. After hearing, the trial court fixed the assessed valuation of the land and building owned by petitioner at $665,000 for the tax year 1975/1976 and at $680,000 for each of the tax years 1976/1977 through 1979/1980. In so doing it reached a proper conclusion. The property in question is prime residential property. It is located at the southeast corner of 10th Street and Fifth Avenue and is improved with a 15-story and penthouse fireproof building containing 63 apartments. It was transferred three times in 1969. On the first occasion the total purchase price was $800,000. On the last two occasions the consideration was $1,400,000. In 1959 the mortgages outstanding on the land and building were consolidated and extended. As late as November, 1969 the amount outstanding on this mortgage was $1,250,000. Apparently, this was too great a burden for the building to carry for the premises were foreclosed in December, 1975. Recent sales of comparable property in the vicinity, two of which took place for the purpose of conversion into co-operatives, showed a ratio of sales price to assessed valuation ranging from 112% to 256%. The two which were converted to co-operatives showed the highest ratio; 256% and 167%. However, a prior sale of one of those converted, which took place some three years prior to the sale for conversion purposes, showed a ratio of 145% while the other two showed ratios of 167% and 112%. The trial court's reference to the possibility of the conversion of the subject premises to co-operative apartments is somewhat unfortunate. Although that is an element which the trial court properly could have considered in determining assessed valuation, it is but one element and far from the most important, at that. However, considering all of the elements which go into the makeup of value we are satisfied that the conclusion reached was a proper one, i.e., that it represented a price which a ready and willing buyer and a ready and willing seller would each consider an acceptable price. Concur — Sullivan, Ross and Bloom, JJ.

Murphy, P. J., dissents in a memorandum as follows: This apartment building, built in 1923, contains 63 apartments and 215 rooms. During the five tax years under discussion (1975/1976 — 1979/1980), the number of rent-controlled tenants decreased from 48 to 42; the rent-stabilized tenants increased from 11 to 17; the apartments leased to professionals remained constant at three. The assessments for the five-year period ranged from $665,000 to $680,000. Using the capitalization method, petitioner Precision's appraiser, Sidney Panzer, valued the property during this time span from $320,000 to $550,000. Panzer's calculations reflected the fact that the income from this building was essentially limited by the number of rent-controlled and rent-stabilized tenants. The city appraiser, Marshall Ziring, valued the property on the basis that it had a co-operative potential in the Washington Square area. Ziring assessed the property at $1,300,000 for the tax years in question. He primarily relied upon two recent co-operative sales in that vicinity. In confirming the assessments, Special Term agreed with the city's appraiser that the property should be valued on the basis of its co-operative potential. Under section 306 of the Real Property Tax Law, real property must be assessed at full value. In setting true value for assessment purposes, it is

immaterial that the building is not an adequate improvement in the sense that it does not utilize the land to develop the highest income. The owner is to be assessed on the basis of the building that was erected, and not on what could have been erected (*Matter of Pepsi-Cola Co. v Tax Comm. of City of N. Y.,* 19 AD2d 56, 58). In valuing property, its reasonable adaptability for other use may be considered (*Great Atlantic & Pacific Tea Co. v Kiernan,* 42 NY2d 236, 240; *Matter of Pepsi-Cola Co. v Tax Comm. of City of N. Y., supra,* at p 60). However, a use which is no more than a speculative or hypothetical arrangement in the mind of an appraiser may not be accepted as the predicate for an assessment of full value. (*Matter of City of New York [Shorefront High School—Rudnick],* 25 NY2d 147, 149.) Where conversion is imminent, the co-operative potential of a building may be reflected in its fair market value (cf. *Matter of Quittner v Herman,* 15 AD2d 68, 69, affd 11 NY2d 800; cf. *Matter of Payson v Caputa,* 9 AD2d 226, 233). In deciding this appeal, cognizance must be taken of the fact that co-operative conversion in New York City is often difficult to effect within the strictures of rent control and rent stabilization. The sponsor frequently meets tenant opposition, challenges from the Attorney-General, financing problems, and sundry other difficulties. The city has not shown any likelihood that this building could have been converted to co-operative use within the near future through any reasonable efforts of the owner. As was mentioned above, most of the tenants in the building were either rent controlled or rent stabilized during the tax span involved. The city has not demonstrated that even one tenant in the building was interested in forsaking his rent-controlled or rent-stabilized status in favor of a co-operative arrangement. To appraise this property upon its co-operative potential without considering the actual probability that such a conversion could be effected in the near future through the application of reasonable resources is to engage in pure conjecture. Since most plans to convert are high risk ventures in the City of New York, there is no reason to consider a building's co-operative potential absent some proof that co-operation is imminent. Co-operative potential should not be considered upon a baseless projection made by an appraiser. Any discussion as to whether the two co-operative sales submitted by the city's appraiser, Ziring, are comparable would be an academic exercise because there has been no demonstration that the building should be treated other than as a rental property. Moreover, at least one of those sales is suspect because it was made from the developer to a co-operative corporation. A sale of this nature does not reflect true market value (cf. *Matter of Payson v Caputa, supra,* at p 232). While Ziring did submit some sales of rented buildings in the area, those sales are of questionable value since the appraiser never inspected those buildings to determine their comparability to the subject building. Furthermore, since the thrust of Ziring's appraisal was that this property should be primarily appraised upon its co-operative potential, he did not focus upon the building's value as a rental property. Upon remand, he should be given that opportunity. The three sales of this building in 1969 have some evidentiary value. However, these sales must be adjusted because of their remoteness. It must be stressed that the rental income for this building during the 1970's did not increase at the same proportional rate as its expenses. Therefore, it is very possible that the actual value of this building decreased during the 1970's. The increased expenses may well explain the fact that this building was foreclosed in 1975. While the outstanding mortgage and interest totaled $1,268,681.41, the record does not indicate the amount the first mortgagee paid at the referee's sale. In any event, a distress sale of this type is not probative of open market value (*Matter of 860 Fifth Ave. Corp. v Tax Comm. of City of N. Y.,* 8 NY2d 29, 31; *Waldenmaier v State of New York,* 33 AD2d 75, 77). The petitioner's appraiser, Panzer, properly valued the property by giving signifi-

cant weight to the actual income received from the controlled and stabilized tenants. (*Matter of Block v Tax Comm. of City of N. Y.,* 33 AD2d 899.) In adopting Ziring's theory of appraisal, Special Term did not analyze the sales of rental properties submitted by either appraiser. Therefore, this matter should be remanded to the court for further consideration of the rental sales submitted by both appraisers. While this court has fact-finding power in this matter, it is better policy to remand this particular case so that additional evidence may be requested, if necessary, by the trial court. The trial court will also have the opportunity to examine the appraisers on the details of their appraisals. Accordingly, the final judgment of the Supreme Court, New York County (Mangan, J.), entered June 23, 1981, confirming the assessments, should be reversed, on the law and the facts, and the matter should be remanded for further proceedings consistent herewith.