■ In the Matter of 309 UNION STREET CORPORATION, Appellant, v FINANCE ADMINISTRATOR OF THE CITY OF NEW YORK et al., Respondents. — In consolidated proceedings pursuant to article 7 of the Real Property Tax Law to review tax assessments on certain real property for the tax years 1978/1979, 1979/1980, and 1980/1981, petitioner appeals from an order and judgment (one paper) of the Supreme Court, Kings County (Ventiera, R.), dated August 7, 1981, which dismissed the petitions and confirmed the assessments for each of the tax years under review. Order and judgment reversed, on the law and the facts, and new trial granted, with costs to abide the event. The subject property, 339-343 Court Street (also known as 301-311 Union Street), is located in the Carroll Gardens section of Brooklyn, and is improved with a two-story, fireproof office building erected in 1959 and expanded in 1962. The building is essentially owner-occupied, for while the petitioner is known as the "309 Union Street Corp.", it is not disputed that the building is occupied "by various unions of the International Longshoremen's Association" and that the owners and occupants are "related entities". The assessments (which were confirmed), the appraised value as testified to by the respective experts, and the petitioner's own allegations of value are as follows:

| Tax Year 1978/79 | Assessed Valuation | Petitioner's Claimed Value | Petitioner's Expert | City's Expert |
|---|---|---|---|---|
| LAND | $ 33,000 | | $ 33,000 | $ 48,900 |
| BLDG. | 367,000 | | 187,000 | 909,400 |
| TOTAL | 400,000 | $180,000 | 220,000 | 958,300 |
| 1979/80 | | | | |
| LAND | $ 33,000 | | $ 33,000 | $ 48,900 |
| BLDG. | 367,000 | | 187,000 | 909,400 |
| TOTAL | 400,000 | $180,000 | 220,000 | 958,300 |

| 1980/81 | | | | |
|---|---|---|---|---|
| LAND | $ 33,000 | | $ 33,000 | $ 48,900 |
| BLDG. | 367,000 | | 187,000 | 909,400 |
| TOTAL | 400,000 | $180,000 | 220,000 | 958,300 |

In a certified financial statement for the year ending December 31, 1978, the petitioner reported actual rental income of $246,644. In addition, the petitioner reported its "base rents" from "offices" at $171,150 for 1977, $246,644 for 1978 and $266,289 for 1979 in its "CERTIFICATION OF INCOME AND EXPENSES". However, the petitioner's "CERTIFICATION" also contained the following notation: "This building is occupied by a union, and tenants made up of tax-exempt organizations which are part of the union. There are no leases". In light of the above, and in apparent deference to the Court of Appeals admonition against relying upon actual rentals "where [the] landlord and tenant are business affiliates or [the] property is owner-occupied" (*Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau*, 45 NY2d 538, 543), the appraisers for both the petitioner and the city disregarded the petitioner's actual rental income in arriving at their estimates of value through the income capitalization approach. The referee, however, shunned this analysis and relied, *inter alia,* upon the actual rentals in capitalizing the income and confirming the assessments. In our view, this was error. While such evidence may have been included in the record (see *Matter of City of New York [Oceanview Terrace]*, 42 NY2d 948), it was, on the facts of this case, of little, if any, guidance to sound appraisal. As the Court of Appeals stated in *Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau (supra,* p 543): "[I]f examination discloses that rent has been arbitrarily set without regard to the market rental value whether through self-dealing, as, for example, where a landlord and tenant are business affiliates or property is owner-occupied (*Woolworth Co. v Commission of Taxation,* 26 AD2d 759), or, certainly, where there is any indication of collusion, the rent arrangement will be of little, if any, guidance to sound appraisal". Notwithstanding the foregoing, however, it is the petitioner who bears the burden of proving that the assessments in question are erroneous (*People ex rel. Wallington Apts. v Miller,* 288 NY 31), and in this regard its burden is not diminished by the referee's erroneous reliance upon actual rentals derived from affiliates in valuing its owner-occupied building. Thus, the nature of the proof adduced by the petitioner is highly relevant to our determination. To estimate value, petitioner's expert looked to a single building located in the Borough Hall section of Brooklyn, and to 55 leases of space within that building, for his comparables. The quality of this selection can best be gauged from the following excerpt from his report: "The subject property is located in a residential area and within the immediate vicinity there are no other office buildings. Therefore, in establishing a rental value for the building, it was necessary for this appraiser to utilize office rents in the Borough Hall section of Brooklyn which is approximately a little over a half mile north of the subject location. This prime office area which is located within the confines of the Civic Center, is accessible to all of the court buildings, municipal building, and all other governmental agencies. Transportation facilities in the area are excellent. While I have considered office rents within this area, my prime consideration were [*sic*] the rents being received at 16 Court Street, a 36 story office building erected in 1927. During the years 1977, 1978 and 1979, 55 leases were executed in this building for periods of two or more years. The median average base rental for this period was $6.80 and the median average rental including escalations was $7.20. In arriving at my final rental value of $7.00, I have made the following adjustments:

|                          | "Subject Property | 16 Court Street |
|--------------------------|-------------------|-----------------|
| "Location and Amenities  |                   | +15%            |
| "Age and Size of Building | +10%             |                 |
| "Air Conditioning        | + 5%".            |                 |

It will be noted that the petitioner's adjustments cancel out each other so that the rental value per square foot of the subject property was, in effect, considered directly comparable to the rental value per square foot of the Court Street property. In rejecting the comparables of both experts, the referee stated: "Both experts estimated their rental income based upon alleged comparable rentals. Mr. Panzer, for the petitioner, testified, the subject property being owner occupied, and located in an area basically residential, with no office buildings within the area, he went to the closest office area, downtown Brooklyn, utilizing rents from leases in 16 Court Street, made adjustments for those lease rentals based upon location and other amenities * * * This Referee, *without going into details,* has acquired some knowledge as to 16 Court Street, if for no reason other than it (16 Court Street) was the subject of certiorari proceedings to review its real property tax assessments when he was a Justice of the Supreme Court and again as a referee (tax year 1980/81). *It is my considered opinion that there is no comparability between the subject property and 16 Court Street,* whether it be location, rental value, type of use or otherwise. Mr. Brief [the city's expert], in arriving at his estimated income considered what he felt was [*sic*] comparable rents in nearby properties, located at 292 Court Street one and a half blocks from the subject and 375 Court Street, one block on the other side of the property. Lease Nos. 1 and 2, [were] both for a one-story taxpayer buildings [*sic*] * * * occupied by a bank; and lease No. 3 [was for] a two story building * * * leased from the City of New York and used as a child care center. *Although both are located in the same area as the subject; they are of no aid or assistance to the Referee, nor are they comparable to the property under review in this proceeding"* (emphasis added). Having rejected the referee's reliance upon actual rentals in its capitalization of income approach, we are hampered in our ability to determine whether any weight should be given to the comparables offered by either expert by the fact that the referee's rejection of their testimony is not sufficiently explained on the record. Thus, with respect to the petitioner's expert, the referee apparently alluded to his personal knowledge and to knowledge gained in a tax certiorari proceeding involving 16 Court Street, the record of which is not before us on this appeal. Moreover, in rejecting the comparables advanced by the city's expert, the referee did not articulate any particular reason for its rejection. In addition, our present attempt to evaluate this testimony is further impeded by the marked discrepancy in the figures propounded by both parties and the referee in support of their income capitalizations, for while the petitioner's expert projected gross income and total expenses at $110,550 and $63,440, respectively, the city's expert came up with a figure of $108,550 for gross income and only $13,700 for total expenses. As a point of reference, the referee found the following: gross income, $228,000; total expenses, $129,185. Even a quick perusal will reveal that the referee's computation of gross income is more than twice the estimated gross income projected by either expert (manifestly due to his erroneous reliance upon actual rentals in this owner-occupied building), while the disparity in the projection of total expenses by the respective experts is even more pronounced. This, however, is essentially due to their differing opinions regarding the appropriate type of tenancy for the subject, for while the petitioner's expert treated the building as a multiple tenant-type building with the landlord paying most of the operating expenses, the city's expert treated the building as a single tenancy, in which the tenant

would be paying most of the operating expenses under a "net" lease. Under these circumstances, viz., the referee's erroneous reliance upon actual rentals in projecting gross income, the absence of sufficient factual findings to review his rejection of the comparables proffered by either party, and the marked discrepancy between the experts themselves regarding the appropriate nature of the tenancy to which the subject is maximally suited, we are not in a position to finally determine the matter. Accordingly, we believe that there must be a new trial at which the relevant issues may be more fully explored (see *Mobil Oil Corp. v Tax Comm. of City of N. Y.,* 60 AD2d 910; *Matter of Pepsi-Cola Co. v Tax Comm. of City of N. Y.,* 19 AD2d 56). Lazer, J. P., Mangano, Gulotta and Bracken, JJ., concur.