■ DORMITORY AUTHORITY OF THE STATE OF NEW YORK, Appellant, v 59TH ST. & 10TH AVE. REALTY CORP. et al., Respondents.—Judgment, Supreme Court, New York County, entered after trial in this condemnation proceeding on November 26, 1975, awarding claimants $13,568,539.17, with interest from the date of the vesting, unanimously modified, on the law and on the facts, to the extent of reducing the total award to $6,620,000 and, as so modified, affirmed, without costs and without disbursements. The trial court erred in adopting a reproduction cost valuation for the building involved in these proceedings, a four-story building at 59th Street and Tenth Avenue. The evidence clearly shows that, far from being unique, it was an income producing building, susceptible to many uses. We agree with the

contention of the authority that the building was essentially no different from other office and warehouse facilities in the city. There is no reason why the court should have refused to apply the traditional economic, or capitalization of income, approach to valuation. We believe that the expert who testified for the appellant arrived at a fair and reasonable figure in the sum of $3,160,000 for the value of the building and we adopt same. As to the land value, there was a wide divergence of opinion between the expert for the appellant, who testified that the value was $50 per square foot, and that of the respondents, who testified that the value was $80. In finding that the value was $70 per square foot the trial court erred. The expert witness for the appellant gave a more reasonable basis for his opinion, basing it upon his analysis of five separate land sales, similar to the property in question, and closely located thereto. The sale of the Fox Film Building, which came to the attention of the parties during the trial of this case, was subjected to analysis by appellant's expert and his report tends to strengthen the conclusions of this court that the trial court was far too generous in awarding $70 per square foot. A more reasonable figure, which this court adopts and which is supported by the evidence, is $50 per square foot for a total of $3,460,000. It follows that the additional allowance awarded to the respondents of $395,200.17 was unwarranted and must be stricken. Further, we find unjustified the award of $312,489 for amounts expended for such things as labor severance pay, arbitration expenses, etc. On this record it is clear that such expenses were not attributable to the condemnation. These payments were the result of negotiations between the respondent, Melville, and its employees, which should not be charged to the appellant. There is no basis for the award to the respondents of $515,850, which the trial court intended as rent to the respondents for appellant's possession of the upper two floors of the subject building for about 10 months. This possession was by agreement between the parties which permitted the respondents to remain in possession so as to give them more time to relocate. It was respondents' needs which were being satisfied and, certainly, appellant should not be made to pay this rental. Concur—Markewich, J. P., Lupiano, Birns and Capozzoli, JJ.; Kupferman, J., concurs in the following memorandum: Kupferman, J. (concurring). While I concur in the court's determination, I do not think it amiss to emphasize certain facts with respect to the premises involved, in the light of the current New York City and New York State fiscal crisis. We have in contention before us a claim by the defendants-respondents for $13,568,539.17, as awarded, together with interest at 6% from April 20, 1971, as against the Dormitory Authority's concession of a sum due of $6,620,000, which latter amount this court finds appropriate in the circumstances. This property was taken in haste in eminent domain by condemnation on the date abovementioned for the purpose of the John Jay College of Criminal Justice. It had the effect of cutting off any real estate taxes for the City of New York based on the then value for tax purposes of the property of $3,350,000. Melville Shoe Corporation (Miles Shoes) was then forced to move out of the City of New York to three different locations in Massachusetts and New Jersey for its warehousing distribution. At the present time, the Board of Higher Education is giving serious consideration to closing the school. (See *New York Times,* Monday, Feb. 23, 1976, p 48, cols 3, 4; Thursday, March 4, p 41, cols 6-8; Tuesday, March 9, pp 1, 38, col 5.) *Res ipsa loquitur.*