*238
 
 Gabrielli, J.
 

 In this tax certiorari proceeding the issue presented for review is the proper method of valuation of appellant’s property, one of the world’s largest food processing plants. Respondent tax officials contend that the property is a specialty and thus the reproduction cost-less depreciation method should be utilized in establishing the value of the property for tax assessment purposes, while appellant maintains that the traditional market value approach will yield its true legal and full value.
 

 The subject property is located in the Town of Horseheads, Chemung County, in that area of New York State known as the "Southern Tier”. The structure was designed and constructed for appellant to accommodate its food processing, warehousing and shipping operations on a regional scale; and the plant, which has a floor area of 1,544,916 square feet, serves a large portion of the eastern United States. It contains 73 truck loading docks, several interior railroad sidings, laboratories, offices, cold storage and refrigeration facilities, in addition to other fixtures utilized in appellant’s food processing enterprise. The building is divided into large open areas on the main floor while mezzanine walkways above the main floor provide employee access to working areas, and tunnels beneath it furnish utility services.
 

 In 1973, respondents fixed the assessment of the property in the amount of $4,683,000 at an equalization rate of 21%, thus yielding a full value of $22,300,000. Appellant commenced this proceeding to declare the assessment void, or in the alternative to have it reduced to a proper level. At trial, real estate appraisers and experts produced by appellant, espousing the market value approach, testified that the value of the prop
 
 *239
 
 erty was $13,900,000 while respondents’ appraiser fixed the value at $19,200,000. In arriving at their valuation, appellant’s appraisers relied upon sales of similar properties located in the eastern United States, which were some 500 to 1,000 miles distant from the subject property. The trial court, relying on the unchallenged testimony of the appellant’s appraisers that the market for the subject property was regional in nature, found that there was an active market for the type of building here involved throughout the eastern United States. Significantly, the court also found that, while the subject property was built to serve the particular purposes of appellant’s business, "the building is easily convertible to other industrial uses. It can readily be subdivided into smaller units, if desired. No heavy expenditure is called for to remove present fixtures or install others and the manner in which the building is constructed and laid out lends itself to simple alteration”. Thus, the court, holding that the market value approach was proper in this case and that valuation of the subject property could be based upon sales of comparable properties beyond its immediate area, adopted the appellant’s appraisers’ value of $13,900,000.
 

 Without disturbing the trial court’s findings, the Appellate Division reversed and held that the property should be valued as a "specialty” because of the above-described features adapting it to appellant’s use and, further, because no sales of similar property in the immediate locale could be found. The Appellate Division thus remitted the matter for a further hearing in which the value of the property was directed to be determined by the reproduction cost-less depreciation method of valuation. Following this hearing, the trial court fixed the value of the property, according to the method mandated by the Appellate Division, at $16,700,000. This latter determination, of course, is not subject to review on this appeal, as we are here concerned only with the original, nonfinal order of the Appellate Division from which this appeal is taken pursuant to CPLR 5601 (subd [d]) (see
 
 First Westchester Nat. Bank v Olsen,
 
 19 NY2d 342).
 

 Section 306 of the Real Property Tax Law requires that all property be assessed at its full value and, generally, it is "market value” which provides the most reliable valuation for assessment purposes (see
 
 People ex rel. Parklin Operating Corp. v Miller,
 
 287 NY 126, 129; Lee & Le Forestier, Review and Reducing of Real Property Assessments, § 1.03, p 3).
 
 *240
 
 However, where there is no reliable market data, other methods are available such as the capitalization of income method which is utilized in valuing rental property (see, e.g.,
 
 Matter of City of New York [Oceanview Terrace],
 
 42 NY2d 948;
 
 Matter of Pepsi-Cola Co. v Tax Comm.,
 
 19 AD2d 56), or the reproduction cost-less depreciation method which is utilized when the subject property may properly be categorized as a "specialty” (see
 
 People ex rel. New York Stock Exch. Bldg. Co. v Cantor,
 
 221 App Div 193, 197, affd 248 NY 533). While various definitions have been advanced, a specialty may perhaps be best defined as a structure which is
 
 uniquely
 
 adapted to the business conducted upon it or use made of it
 
 and
 
 cannot be converted to other uses without the expenditure of substantial sums of money
 
 (People ex rel. Hotel Paramount Corp. v Chambers,
 
 298 NY 372, 375;
 
 Matter of Sperry Rand Corp. v Board of Assessors of County of Nassau,
 
 10 AD2d 720; see, also,
 
 Matter of County of Nassau [Colony Beach Club of Lido],
 
 43 AD2d 45, 49, affd 39 NY2d 958). Property has been categorized as a specialty where some intangible element such as the owner’s prestige or good will inheres in its value (see, e.g.,
 
 G.R.F., Inc. v Board of Assessors of County of Nassau,
 
 41 NY2d 512, 513-514;
 
 Matter of Seagram & Sons v Tax Comm of City of N. Y.,
 
 18 AD2d 109, affd 14 NY2d 314, 318;
 
 People ex rel. Hotel Paramount Corp. v Chambers, supra,
 
 pp 374-375).
 

 On the other hand, property does not qualify as a specialty where it possesses certain features which, while rendering the property suitable to the owner’s use, are not truly unique to his business but, in fact, make the property adaptable for general industrial use. Thus, if no great expense would be entailed in converting the property from the present owner’s use to other business and industrial uses and if a market value may be ascertained, property should not be valued as a specialty merely because it contains such features as interior railroad sidings, truck loading docks or other amenities and fixtures which are not truly unique to the owner’s business (see
 
 McDonald v State of New York, 52
 
 AD2d 721, 722, affd 42 NY2d 900;
 
 Dormitory Auth. of State of N. Y. v 59th St. & 10th Ave. Realty Corp.,
 
 51 AD2d 953, affd 41 NY2d 1038;
 
 Matter of City of New York [Lincoln Sq. Slum Clearance Project],
 
 15 AD2d 153, 170-171). Such "special features” do not, without more, require departure from the market value approach to valuation (cf.
 
 G.R.F., Inc. v Board of Assessors of County of Nassau, supra,
 
 p 515). In
 
 McDonald v State of New
 
 
 *241
 

 York (supra)
 
 an animal hospital equipped with "kennels, dog runs, [and] an incinerator” was held not to be a specialty. Similarly, such "special features” as "dehumidifying equipment” and "recessed lighting” did not mandate valuation of property as a specialty in
 
 Matter of City of New York (Lincoln Sq. Slum Clearance Project) (supra).
 
 And, in a recently decided condemnation case, we rejected the owner’s argument that,
 
 inter alia,
 
 interior truck loading docks and luxury office space qualified the property as a specialty
 
 (Dormitory Auth. of State of N. Y. v 59th St. & 10th Ave. Realty Corp, supra).
 

 In the instant case, those facilities such as utility tunnels, employee walkways, truck loading docks, refrigeration facilities or the like do not render the subject property a specialty incapable of valuation according to the normal market value method. There was testimony by witnesses on both sides that these so-called "special features” would not interfere with the use of the property for other industrial purposes and, indeéd, respondents concede that the property may be so used. Moreover, the features relied upon by the Appellate Division in categorizing the plant as a specialty could be utilized in a wide variety of industrial uses and, in fact, there was testimony that some of them such as utility tunnels, employee walkways and temperature control systems made the plant more flexible and adaptable. The property, therefore, was not so uniquely suited to appellant’s business as not to be reasonably adaptable to other industrial uses; and this conclusion finds further support in the trial court’s finding, not disturbed by the Appellate Division, that the property could be converted to general industrial use without a substantial expenditure of funds.
 

 The Appellate Division reasoned that the reproduction costless depreciation method of valuation should be utilized since there were no reliable indicia of market value because of the lack of evidence of comparable sales in the immediate area. That court also rejected the trial court’s reliance on appellant’s out-of-State comparable sales. While it is generally true that comparable sales should not be too remote in location from the subject property (see Lee & Le Forestier,
 
 op. cit,
 
 § 1.19, p 15), we have previously stated that "Receiving evidence of sales of property beyond the immediate vicinity of the subject property is a matter resting in the sound discretion of the trial judge”
 
 (Levin v State of New York,
 
 13 NY2d 87, 92 [Fuld, J.]; see, also, 1 Orgel, Valuation Under Eminent
 
 *242
 
 Domain, § 138, p 586). Whether evidence should be received of comparable sales which are some distance away from the subject property depends, of course, on the nature and character of the property involved. It would not be proper, for example, to look beyond New York City in valuing an office building located therein because such a building would obviously have a local market. Here, however, there is no local market for appellant’s facility but the record is clear, and the Trial Judge so found, that there was a broad regional market for this type of industrial plant. Under these circumstances, we think that it was not error to depart from the ordinary rule with respect to location of comparables and, thus, the trial court properly relied upon the out-of-State comparable sales utilized by appellant’s appraiser in determining the value of the property by the market value approach. The ordinary or general rule should not blind us to the fact that the ultimate purpose of valuation, whether in eminent domain or tax certiorari proceedings, is to arrive at a fair and realistic value of the property involved. The reproduction cost method of valuation may result in serious overvaluation of the property due to rising construction costs and its failure to adequately account for factors such as functional obsolescence and physical deterioration (see
 
 G.R.F., Inc. v Board of Assessors of County of Nassau, supra,
 
 p 514; Lee & Le Forestier,
 
 op. cit.,
 
 § 1.07, p 5; 2 Orgel,
 
 op. cit,
 
 §§ 188, 199). Thus, reproduction cost should be utilized only in those limited instances in which no other method of valuation will yield a legally and economically realistic value for the property (see, generally, 1 Bonbright, Valuation of Property, pp 175-176).
 
 *
 
 Here, because of the lack of any local market and the existence of a broad regional market for appellant’s type of property, it is proper to depart from the ordinary rule relating to the proximity of comparables in order to arrive at a more realistic value than would be obtained by the reproduction cost method. To reject a sound and valid approach to valuation where the normally applipable rule has no relevance under the circumstances of a particular case, is to abandon the economic realism which should characterize valuation and embrace a rigid, dogmatic approach which will not yield fair and equitable results. As we recently stated in
 
 G.R.F., Inc. v Board of Assessors of
 
 
 *243
 

 County of Nassau (supra,
 
 p 515), "[p]ragmatism * * * requires adjustment when the economic realities prevent placing * * * properties in neat logical valuation boxes” (citations omitted).
 

 Finally, with respect to the Appellate Division’s objection that no adjustments were made by the appraisers for differences in the localities in which the out-of-State comparable sales were located, it should be noted that there was testimony indicating that conditions such as business climate, labor, transportation and availability of public utilities were taken into account, and, in certain cases no adjustments were necessary. There was also testimony that if adjustments were made for differing conditions, the result would have been a reduction in value since conditions in the localities of the comparables were all more favorable than those in the Town of Horseheads, the location of the subject property.
 

 Accordingly, the order appealed from should be reversed and the order of Supreme Court, Chemung County, entered July 3, 1974, reinstated, with costs.
 

 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, with costs, etc.
 

 *
 

 Of course, reproduction cost-less depreciation may always be introduced to establish the upper limit of value (see
 
 G.R.F., Inc. v Board of Assessors of County of Nassau, supra,
 
 p 514;
 
 People ex rel. Manhattan Sq. Beresford v Sexton,
 
 284 NY 145).