In the Matter of XEROX CORPORATION, Appellant, v FRANCES Ross, as Assessor of the Village of Webster, et al., Respondents.

In the Matter of XEROX CORPORATION, Appellant, v ROY J. SANGER, as Assessor of the Town of Webster, et al., Respondents.

Fourth Department, November 16, 1979

### APPEARANCES OF COUNSEL

*Harris, Beach, Wilcox, Rubin & Levey (James M. Hartman* and *Edward H. Fox* of counsel) and *Davidson, Fink, Cook & Gates (Douglas S. Gates* of counsel), for appellant.

*Robert L. Burkwit (David Levy* of counsel), for Frances Ross and another, respondents.

*Herbert Stern (Levy, Feldman & Licata, P. C.,* by *David Levy* of counsel), for Roy J. Sanger and another, respondents.

### OPINION OF THE COURT

MOULE, J.

In this tax certiorari proceeding involving assessments for the tax years 1972 through 1975 inclusive, the issue presented for review is whether Xerox's market data appraisal is the proper method of valuation for Xerox's research, manufacturing and warehousing complex in the Town and Village of Webster, New York.

The Xerox complex comprises 55 buildings on 1,032 acres of land. The buildings contain approximately 5½ million square feet of space and had an average age of 3.7 years as of 1972, the first assessment year. Manufacturing accounts for approximately 50% of the space, research facilities 24%, warehousing

14%, office 9% and services and support facilities 3%. Some of the buildings perform a single function and others contain mixed elements of manufacturing, research and warehousing. One building houses computer facilities which serve the entire complex. There are 32,300 feet of private roadways; 62,600 feet of private storm and sanitary sewers; 72 acres of parking lots; 20,000 feet of sidewalks; 154 acres of landscaping; and 68 acres of recreational facilities. In addition, the complex has its own telephone system, electric power distribution systems, and a steam generating and distribution system. Some of the buildings are connected by tow motors and lifts so that materials can be moved between buildings during the manufacturing process.

For the year 1972 the complex was assessed at a full value of $129,195,200.* In its petition challenging the assessment, Xerox alleged that the proper assessment, based upon its own cost approach appraisal, should be $92,749,820. However, at trial, Xerox chose to withhold its cost approach appraisal and to proceed instead with a market approach appraisal showing the value of the property to be $40,000,000. As its evidence, the town produced a cost approach appraisal which valued the Xerox property at $164,473,500. The town based much of its appraisal upon Xerox's computerized cost accounts.

The trial court held that Xerox's comparable sales were not comparable and that Xerox had not sustained its burden of proving that its property was worth less than the assessed value and confirmed the town's $129,195,200 appraisal. In a memorandum decision, the court stated that the large disparity between the values arrived at by the cost and market approaches indicated that the market approach employed by Xerox did not yield a realistic value. By way of example, the court noted that in the year immediately preceding 1972, Xerox had completed construction of 10 buildings at a total cost of $37,561,000, yet its market approach appraisal indicated that the total value of the entire complex several months later was only $40,000,000.

■ Section 306 of the Real Property Tax Law requires that all property be assessed at its full value. Generally, market value provides the most reliable valuation for assessment purposes (see *People ex rel. Parklin Operating Corp. v Miller*, 287 NY 126, 129). Unique properties for which there is no

---

* Unless otherwise noted, all figures concern the 1972 tax year.

market are considered specialties and are valued by the cost basis *(Matter of County of Suffolk [C. J. Van Bourgondien, Inc.],* 47 NY2d 507). In *Matter of Great Atlantic & Pacific Tea Co. v Kiernan* (42 NY2d 236), the Court of Appeals held that the market value approach was the proper method of valuing a 1½ million square foot food processing plant, noting that, although the sales contained in the appraisal were all smaller buildings than the A & P plant and although the sales were different types of plants in different areas of the country, nevertheless, they were comparable because the A & P plant was not a specialty and it could be adapted to accommodate different types of manufacturing without excessive expense. The court noted that the building could be subdivided for use by various potential buyers. *Matter of Great Atlantic & Pacific Tea Co. v Kiernan (supra)* thus stands for the proposition that, if at all possible, the market approach must be used to evelute industrial property.

Xerox presented a market approach appraisal comprising sales of manufacturing and warehousing plants in different areas of the country. Xerox's expert witnesses believed that in order to be marketable, it would be necessary to subdivide the Xerox complex and sell it in parts. Through subdivision they calculated the complex could be marketed on a national basis in 3 to 5 years. The Xerox appraisal placed the greatest weight upon five sales which were the same ones given most weight by A & P in the *Great Atlantic & Pacific Tea Co. (supra)* case. Each of these sales was a single building, ranging in size from 400,000 to 1,200,000 square feet, used either for manufacturing or warehousing. The property sizes ranged from 97 to 176 acres. None of the properties had laboratory facilities and none had extensive site improvements in addition to the building.

Xerox's appraiser made adjustments to the sales in order to render each comparable to the Xerox complex as a whole. The adjustments fell into four categories: age, quality and condition; level of functional utility; economic climate; and marketability and size. The Xerox appraiser made large positive adjustments, ranging from + 20% to + 125%, to each sale to reflect the Xerox complex's superior quality and condition. He adjusted each negatively for functional utility, testifying that these adjustments reflected that the high proportion of office and research space at the Xerox complex made it less flexible than each of the sales, which were largely single function

plants. Each sale received a negative economic climate adjustment which the Xerox appraiser testified represented that the Rochester area was inferior economically to the surroundings of the five sales, which were located in Memphis, Tennessee; Charleston, South Carolina; Avon Lake, Ohio; Maumee, Ohio; and Lancaster, Ohio. Finally, the Xerox appraiser made negative marketability and size adjustments to four of the sales to reflect that each would be easier to market than the Xerox complex, which would have to be subdivided and sold in parts.

The court was correct in holding that these sales, even as adjusted, were not comparable to the Xerox complex and were not reliable indicators of its value. The present case is sufficiently distinguishable from *Matter of Great Atlantic & Pacific Tea Co. v Kiernan (supra)* in that, even though these sales were reliable comparables to the A & P plant, they are not comparable to the Xerox complex. First, the A & P plant and all of the sales are single buildings whereas the Xerox complex comprises 55 separate buildings. Second, the A & P plant, at 1,500,000 square feet, was only slightly larger than the largest of the sales which ranged from 400,000 to 1,200,000 square feet, while the Xerox complex, at 5,500,000 square feet, is several times the size of even the largest sale. Third, the Xerox complex acreage is many times larger than that of the A & P plant and the sales. Fourth, the A & P plant and all of the sales were manufacturing and warehousing facilities, while the Xerox complex comprises a variety of manufacturing, warehousing and laboratory buildings. Finally, the disparity between the $16,700,000 cost approach appraisal and the $13,900,000 market value approach appraisal of the A & P plant was not as severe as the disparity between the $40,000,000 market approach appraisal and Xerox's own $92,749,820 cost approach appraisal.

The Xerox market value appraisal is defective for several other fundamental reasons. Xerox admitted that there was little or no market where properties the size of the Xerox complex are actively bought and sold. However, they sought to cure this problem on the basis that the Xerox property could be subdivided and sold in parts. The basis for subdividing is supported by the evidence that the manufacturing and warehousing portions of the Xerox complex are of sufficient size and flexibility to be adaptable for use by other types of industries.

Xerox's appraisal which proceeded upon this theory was

unreliable for several reasons. First, its major comparable sales comprised only manufacturing and warehousing buildings. Second, instead of using comparables to arrive at values for different parts of the Xerox complex, then aggragating them to arrive at a value for the entire complex, the Xerox appraisal attempted to adjust each sale to the complex as a whole. In doing this, the appraisal decreased the value of the Xerox complex, through functional utility adjustments, for the complex's high percentage of laboratory and office space, notwithstanding that laboratory space is more expensive to construct than manufacturing and warehouse space.

In addition, the marketability adjustments decreased the value of the Xerox property because of its size. Xerox's appraiser testified that he decreased the value of the Xerox property 12% per year for a 3- to 5-year holding period that would be required to subdivide and sell the complex.

Speculation on a sale over a period of time and a discount of the subject property is novel to New York tax assessment and condemnation valuation procedures. Although *Matter of Great Atlantic & Pacific Tea Co. v Kiernan* (42 NY2d 236, *supra)* mentioned the possibility of subdividing, it did not suggest that there be speculation concerning how long it would take to sell the subdivided property and a concomitant discount to compensate for this period.

■■ Because this is a tax certiorari rather than a condemnation proceeding, the court was not obliged to arrive at a value for the Xerox property unless Xerox carried its burden of proving that the assessment was erroneous *(Matter of Pepsi-Cola Co. v Tax Comm. of City of N. Y.,* 19 AD2d 56; *Matter of Seagram & Sons v Tax Comm. of City of N. Y.,* 18 AD2d 109, 110, affd 14 NY2d 314). For the reasons stated above, Xerox's market approach appraisal was not sufficient to carry this burden. In addition, the court determined that Xerox exposed several deficiencies in Webster's cost approach appraisal, most importantly, the possibility that it included items, such as movable partitions, which were arguably not taxable as realty. However, it held that Xerox did not succeed in proving that correction of these errors would reduce Webster's $164,473,500 appraisal to a figure below the $129,195,-200 assessment. Accordingly, the court's confirmation of the assessment should be affirmed.

Xerox contends secondly that, if we find the cost approach to be the proper method of valuing the Xerox property, we

should remand the case so that Xerox can put into evidence its cost approach appraisal. In preparation for this tax assessment challenge, Xerox prepared a cost approach appraisal and a market approach appraisal. Xerox based its petitions upon its cost approach appraisal, alleging that the proper value of its property was $92,749,820. However, at trial, Xerox presented its market approach appraisal alleging a total value of $40,000,000. Xerox's trial strategy, apparently was to rely upon *Matter of Great Atlantic & Pacific Tea Co. v Kiernan (supra)* and the market value approach even though the relief to which Xerox could be entitled was limited by its petitions to the amount arrived at by its cost approach appraisal (see *Matter of Singer Co. v Town of Mt. Pleasant,* 86 Misc 2d 631, affd 56 AD2d 655).

Xerox could have presented both appraisals at trial, arguing that it considered the market approach proper but, in the event the court disagreed, it was putting into evidence its cost approach appraisal as well. This dual approach would have been appropriate inasmuch as the Court of Appeals has suggested the use of flexible approaches to valuation in exceptional cases where a single theory of valuation is inappropriate. In *G.R.F., Inc. v Board of Assessors of County of Nassau* (41 NY2d 512), the court sanctioned an appraisal consisting of a combination of a cost approach appraisal and an income approach appraisal in order to arrive at the true value of an unusual Gimbel's store in a shopping center. The court noted that "such combinations should be avoided where possible. Pragmatism, however, requires adjustment when the economic realities prevent placing the properties in neat logical valuation boxes" (41 NY2d 512, 515, *supra).*

The case should not be remanded for Xerox to put in its cost approach appraisal. First, we do not decide that the cost approach is the proper method for valuing the Xerox property; rather, we hold that Xerox has failed to prove with its market approach appraisal that the assessment was erroneous. Second, Xerox should not be permitted, at this point, to change its strategy, particularly since its reliance solely on the market approach appraisal was a well-considered and reasonable strategic choice, not an error based upon uncertainty of the law or an improperly prepared appraisal (see *Matter of City of New York [Freeman Estates—First Nat. Stores],* 27 AD2d 243; *Matter of Pepsi-Cola Co. v Tax Comm. of City of N. Y.,* 19 AD2d 56, *supra).*

Accordingly, the order confirming the assessment should be affirmed.

CARDAMONE, J.P., SCHNEPP and DOERR, JJ., concur; WITMER, J., not participating.

Order affirmed, with costs.