In the Matter of VIM CONSTRUCTION CO., INC., Appellant, v BOARD OF ASSESSORS OF THE TOWN OF HUNTINGTON et al., Respondents.

Second Department, August 31, 1981

### APPEARANCES OF COUNSEL

*Suozzi, English, Cianciulli & Peirez, P. C. (Joseph A. Suozzi* and *Richard Fromewick* of counsel), for appellant.

*John M. Duffy, Town Attorney (Robert L. Garfinkle* of counsel), for respondents.

### OPINION OF THE COURT

*Per Curiam.*

This proceeding seeks review of assessed values for the tax years 1976/1977 and 1977/1978. Special Term dismissed the petition. In its decision the court stated:

"The Tax Assessor of the Town of Huntington arrived at an assessed valuation of $59,850.00 with reference to Petitioner's property for each of the tax years in question. The Petitioner's appraiser, on the other hand, arrived at an assessed valuation of $3,656.00 for each of the subject tax

years. The Respondents, at the trial of this action agreed to utilize the same equalization rate used by Petitioner. The differences in the assessed valuations, using the formula V (value) X R (rate) = A (assessed value) between the parties can be readily seen from the following:

"PETITIONER'S APPRAISAL:

| "YEAR | VALUE | EQUALIZATION | ASSESSED VALUE |
|---|---|---|---|
| 1976/77 | $40,000 | $9.08 | $3,656 |
| 1977/78 | 40,000 | 9.14 | 3,656 |

"HUNTINGTON TAX ASSESSOR'S APPRAISAL:

| "YEAR | VALUE | EQUALIZATION | ASSESSED VALUE |
|---|---|---|---|
| 1976/77 | $659,140 | $9.08 | $59,850 |
| 1977/78 | 654,814 | 9.14 | 59,850". |

Petitioner purchased the subject 61.3562-acre tract of land (located in the Town of Huntington) in July, 1971 for a price of $1,227,000. The property was unimproved and was and is zoned for residential use, a zoning which also permits farming.

In 1972 the Town of Oyster Bay acquired a 65-acre parcel contiguous to petitioner's property for the purpose of utilizing same for a landfill site. It planned to put compacted nonincinerated garbage into the site.

Respondents elicited, on cross-examination of petitioner's expert, that in 1975 petitioner offered the property to Suffolk County, under the latter's Farmland Preservation Program, for about $1,700,000.

On January 1, 1976 petitioner leased the land to May Brothers for farming purposes for the term January 1, 1976 to December 1, 1976. The rent was $5,000.

On April 8, 1976 there appeared in the newspaper *Newsday* an article headlined in large letters "Seepage Feared at New Landfill" and which stated, in pertinent part:

"Plainview—Plans to put compacted, nonincinerated garbage into a new landfill site here have aroused concern among water commissioners, who fear seepage into the groundwater supply, and among some nearby residents and business owners, who fear unpleasant orders * * *

"Present plans call for dumping the compacted garbage

on the 65-acre site, which will be covered with a polyvinyl lining to prevent seepage.

"William G. Bentley, director of solid waste in the state environmental department, said this week that the commissioners would be reassured about the protection of the lining. However, another official, who did not want his name used, said that there is a possibility the plastic liner might break, and that town engineers have not yet 'answered all the questions' involved, such as the problem of rainwater drainage. He also said that residents near the site, just north of the Long Island Expressway at the Suffolk County line, might smell odors on a windy day * * *

"But [Assemblyman] Yevoli also charged that the town made 'misleading statements' in its application to the state for the compactor.

"The application states, Yevoli said, that there are no residences within 1,200 feet of the site, although a school, a motel, and a caterer's establishment are within about 600 feet. Bentley said the state has no guidelines on distances or what constitutes a residence."

On August 23, 1976 the New York State Department of Environmental Conservation approved the plans designated as "Phase One" by the Town of Oyster Bay for use of the property as a landfill site.

On June 25, 1976 the Town of Huntington, the assessing authority herein, instituted a lawsuit against the Town of Oyster Bay to permanently enjoin construction of the solid waste disposal facility and to abate same as a nuisance. The first cause of action in the Town of Huntington's complaint stated:

"4. Upon information and belief, defendant Town of Oyster Bay is the owner in fee of certain triangularly shaped premises situated at Plainview in the Town of Oyster Bay, County of Nassau and State of New York north of the Long Island Expressway and west of Round Swamp Road consisting of approximately 65 acres the easterly boundary line of which said premises for approximately 3177 feet is the boundary line between plaintiff Town of Huntington and defendant Oyster Bay, and which said premises are hereinafter referred to as 'the subject premises'.

"5. Defendant Town of Oyster Bay is conducting on the subject premises a massive excavation operation for the purpose of constructing and maintaining thereon a solid waste landfill facility intended for the disposition of huge quantities of raw solid waste without incinerating the same but relying wholly on a compaction method of reducing the volume of such solid waste.

"6. The operation and maintenance by defendant Town of Oyster Bay on the subject premises of said proposed solid waste landfill facility as aforesaid alleged will cause properties in plaintiff Town of Huntington to be damaged and depreciated in value, will injure the health of the citizens of plaintiff Town of Huntington and will interfere with the reasonable, proper and orderly residential development in said Town of Huntington.

"7. Unless defendant Town of Oyster Bay is restrained and enjoined as requested in the prayer of this complaint, plaintiff Town of Huntington and the citizens thereof will suffer substantial damage and irreparable injury."

The Town of Oyster Bay moved to dismiss the complaint. The motion was granted by Special Term by order entered September 17, 1976 and the plaintiff Town of Huntington filed an appeal.

In September of 1976 the Department of Environmental Conservation ordered new hearings and a re-examination of the project. We take judicial notice of the fact that a suit by residents and businesses in the area to enjoin the landfill was dismissed, *inter alia*, because plaintiffs had "elected to seek whatever remedy they may be entitled to before the State Department of Environmental Conservation" *(Tuxedo Hills Civic Assn. v Town of Oyster Bay*, NYLJ, Oct. 25, 1976, p 16, cols 1, 2).

On the appeal by the Town of Huntington from Special Term's order dismissing its complaint against the Town of Oyster Bay, this court reversed, denied the motion to dismiss, and held that the complaint was sufficient on its face *(Town of Huntington v Town of Oyster Bay*, 55 AD2d 641).

On October 25, 1977 Special Term granted a preliminary injunction restraining the use of the landfill site "for the dumping of garbage, rubbish and other waste until such

time as the State Department of Environmental Conservation and/or any other governmental agency, federal, state and/or county, shall issue all appropriate and necessary approvals for the use of the landfill site for such purposes." The court took "judicial notice of the storm of controversy which has swirled about this project", and said: "The public, with reasonable justification, fears the environmental impact of the dumping of garbage into this huge man-made canyon. Recent disclosures of polluted water sources at the eastern end of the Town of Oyster Bay, the presence of carcinogens and other life-threatening matter are common knowledge and a cause for legitimate public alarm." *(Town of Huntington v Town of Oyster Bay*, Supreme Ct., Nassau County, Oct. 25, 1977, WAGER, J.)

On December 1, 1977 the approval previously given by the Department of Environmental Conservation was revoked. At this time the site contained a "40 acre hole, 80 feet deep", although only approximately four acres had been used for actual dumping. The extent of the excavation is graphically reflected in photographs admitted into evidence at the trial.

The trial of this consolidated tax certiorari proceeding involving the tax years 1976/1977 and 1977/1978 was held on September 7, 1978. Petitioner's appraiser reported that:

"Normally, such property would be valued through the analysis of recent comparable sales which also permit such development. However, the subject property is rendered unique by its proximity to a sanitary landfill parcel owned by the Town of Oyster Bay. This sanitary landfill parcel which abuts the subject property to the west renders the subject property total [*sic*] unsuitable for the development of single family homes. This is due to the fact that a sanitary landfill operation has an extremely adverse effect on the surrounding neighborhood. As the site begins to fill up it rises up above the tree line like a swollen boil on the landscape; a sight that can be seen for miles. Flocks of seagulls and other birds are attracted to the garbage that is inevitable [*sic*] included in the dumping. Eventually seepage from the dumping pollutes the ground water and creates pockets of poisonous gas which has been known to seep into nearby dwellings.

"No knowledgeable buyer would consider buying a home or a residential plot in the vicinity of such conditions. The only use remaining and that for a limited time at best is for farming use. Although there are many sales of farmland on Long Island, such sales include any potential for ultimate development for residential use and therefore do not represent the fair market value of the subject property. The only proper method of valuation then is the capitalization of the potential income for farming. Fortunately, this can be done as we have available several nearby farm leases which enable us to develop a fair market rental value for farming purposes on the subject property * * *

"The immediate vicinity is adversely affected by the influence of the Town of Oyster Bay 'dump' in Plainview. Extensive publicity has taken place regarding the development of this 'dump' and real property values have reflected the concern of the market regarding such usage."

Capitalizing the potential income for farming use, petitioner's expert came to the following conclusions:

| "Taxable Status Date | Fair Market Value | Correct Assessment | Current Assessment |
|---|---|---|---|
| June 1, 1976 | $40,000 | $3,632 | $59,850 |
| June 1, 1977 | $40,000 | $3,656 | $59,850". |

The written report of respondents' appraiser (dated August 3, 1978), however, reported:

"There was talk of a landfill operation nearby which was considered. The probability of such a landfill operation is small due to community pressure and builders indicated to this appraiser that they would be very interested in buying the subject property for development as residential sites. The location and proposals would not impair their buying said property and the price would not be affected by the land fill proposal if, in fact, it did go through * * *

"The area demands high prices for single family homes * * * and there is currently new home construction in progress just to the north of the subject property. These homes are going for $87,500 to $97,500 before adding any extras."

Respondents' appraiser reported five "comparable" sales (one of which was petitioner's purchase of the land in 1971 for $1,227,000) and concluded that the value of the subject

property for both of the tax years under review was $875,000.

Special Term dismissed the petition. Its decision stated, in pertinent part:

"Petitioner's disregard of the comparable sales method herein is not justified. Mr. Bailey [petitioner's appraiser] admitted that a parcel of 60 acres to the north of the subject property was utilized by a builder named Cicarelli for the development of single family homes. He did not deny that the Cicarelli subdivision was filed in 1976 and that eight homes had been sold at a price of between $87,000.00 to $97,000.00. He also admitted that a housing development known as the 'Hills' was being built approximately 1,000 feet south of the subject premises. These homes sell from $98,000.00 to $138,000.00 and many have been sold after the Town of Oyster Bay excavated some of the landfill site. In fact, Mr. Bailey admitted that a buffer zone of trees, on the subject property, would block any view of the excavation site.

"In 1973, the son of one of the officers of Petitioner's corporation, purchased residential property across the road from the subject property for $673,000.00. The purchase was made with full knowledge of the landfill site.

"The Petitioner, in view of the above sales, could have utilized the comparable sales approach to finding value and could have made any adjustments which it deemed necessary because of its proximity to the landfill site. The Court recognizes that other methods of valuation may be used where there is no reliable market data available. However, the Petitioner has failed to justify its failure to utilize the best method of valuation of real property under the circumstances herein and the Court cannot give much weight to its appraisal *(Great Atlantic and Pacific Tea Co.* v. *Kiernan,* 42 N.Y.2d 236).

"The Petitioner has clearly failed to sustain its burden of proof that the property which it purchased for $1,200,000.00 in 1971, and which was offered to the County of Suffolk in 1975 under the Farmland Preservation Program for $1,700,000.00, had depreciated to $40,000.00 in 1976 because of excavations on an adjoining parcel owned by the Town of Oyster Bay.

"The Petitioner has failed to demonstrate that the assessment of the Town of Huntington is incorrect and the Petition is dismissed."

We conclude that there should be a new trial.

Undue weight was given to transactions which occurred before the proposed landfill operation became a serious threat and to transactions which occurred after the crisis had subsided. The immediate issue was the value of the land during the tax years 1976/1977 and 1977/1978, specifically, on the taxable status dates June 1, 1976 and June 1, 1977, and not at the time of the 1971 purchase, the 1973 purchase for $673,000 of residential property across the road, the 1975 unconsummated offer to sell under the Farmland Preservation Program and not at the time of the September 7, 1978 trial, at which latter time the landfill danger and public clamor had substantially subsided and home sales at nearby properties were allegedly being made. The April 8, 1976 *Newsday* article, the text of the 1976 complaint of the Town of Huntington—the assessing authority itself—to permanently enjoin the landfill excavations and construction, and the report of petitioner's expert make it abundantly clear that at the time of the taxable status dates for the tax years in issue, the subject property and its market value were seriously affected by its location contiguous to the landfill site because of the prospect of the landfill operation having reached its zenith.

We also note that Special Term was influenced by alleged current sales. However, it appears that these sales occurred after the prospect of the landfill operation had subsided. The record is extremely ambiguous as to the dates, prices and details of these home sales, the exact location of the homes sold and the extent of the exposure of these homes to the alleged sights, smells and dangers of a landfill site compared to the exposure of the subject property to that site and to such operation.

We note further that while respondents' expert listed four "comparable" sales, in addition to the 1971 sale of the subject parcel to petitioner for $1,227,000, none of the four sales was in the vicinity of the subject landfill site and none is stated to be near any landfill site. In addition, the sale in 1971 of the subject parcel was made prior to the

Town of Oyster Bay acquiring the landfill site, and thus prior to the spectre of a landfill.

Under these circumstances there should be a new trial.

DAMIANI, J. P., MARGETT, O'CONNOR and THOMPSON, JJ., concur.

Judgment of the Supreme Court, Suffolk County, dated April 2, 1979, reversed, on the law, without costs or disbursements, and new trial granted in accordance with the opinion herein.