■ In the Matter of ANITEC IMAGE CORPORATION, Respondent-Appellant, v ASSESSOR OF THE CITY OF BINGHAMTON et al., Appellants-Respondents. — Casey, J. Cross appeals from an order of the Supreme Court at Trial Term (Tait, Jr., J.), entered February 9, 1984 in Broome County, which partially granted petitioner's application, in a proceeding pursuant to Real Property Tax Law article 7, to reduce the tax assessments of certain properties for the tax years 1981 and 1982.

Following extended negotiations, petitioner purchased the worldwide graphic arts division of GAF Corporation in August 1981. Included in the assets purchased by petitioner were certain production facilities located in the City of Binghamton, consisting of approximately 40 acres of land and some 48 buildings. Out of a total purchase price in excess of $15,000,000, petitioner and GAF Corporation allocated $3,824,000 to the Binghamton facilities. For the 1981 and 1982 tax years, the city assessed these facilities at more than $31,000,000, taking into account the equalization rate then in effect. Petitioner protested, to no avail, and commenced proceedings pursuant to Real Property Tax Law article 7. After a trial, which included extensive cross-examination of the parties' appraisers, the trial court accepted the total value of the tax parcels presented by petitioner's expert, $6,900,000, and added to that figure the stipulated aggregate value of four film-coating machines installed on the premises, for a total value of $8,222,000. The parties have cross-appealed. We affirm.

The city's chief argument on appeal is that the trial court erred in accepting the value of the tax parcels contained in the appraisal report of petitioner's expert over that of the city's expert. The city's expert was of the opinion that the reproduction cost method provided the only accurate means of determining

the value of the property, based upon his conclusions that the property constituted a specialty and that there were no comparable sales for use in reaching a value based upon the market data approach. The appraisal report of the city's expert did, however, contain both the market data approach and the income approach based upon what he described as "similar" but not comparable sales and rentals, which yielded figures well below that produced by his cost approach but very close to those arrived at by petitioner's appraiser. Petitioner's appraiser used all three methods, which produced a relatively small range of values, but in arriving at his opinion as to fair market value, he gave the most weight to the market data approach.

The "most accurate standard" in determining fair market value usually results from "the sales prices of comparable properties located within the same or similar competitive area in which a parcel being assessed is located, [but] in the absence of sufficiently reliable market data, alternative methods, such as income capitalization or, where necessary, reproduction cost, may be employed" (*Matter of Merrick Holding Corp. v Board of Assessors,* 45 NY2d 538, 542). However: "The reproduction costs method of valuation may result in serious overvaluation of the property due to rising costs and its failure to adequately account for factors such as functional obsolescence and physical deterioration * * * Thus, reproduction cost should be utilized only in those limited instances in which no other method of valuation will yield a legally and economically realistic value for the property" (*Matter of Great Atlantic & Pacific Tea Co. v Kiernan,* 42 NY2d 236, 242).

Guided by these general principles, and considering the conflicting testimony of the parties' experts, we agree with the trial court's decision to reject the opinion of the city's expert and accept that of petitioner's expert. There is ample evidence in the record to support the trial court's finding that the property at issue did not meet any of the criteria necessary to be considered a specialty (*see, Matter of County of Suffolk [C. J. Van Bourgondien, Inc.],* 47 NY2d 507, 511-512) and that there existed comparable sales for use in the market data approach (*see, Matter of Great Atlantic & Pacific Tea Co. v Kiernan, supra,* pp 241-242). The trial court further found that, in addition to relying on the less reliable cost approach, the city's appraiser "inadvertently used inaccurate and incorrect statistics and figures to arrive at some of his basic conclusions", and this finding is also supported by the record.

Next, we reject the city's argument that the opinion of petitioner's appraiser was seriously flawed because his market data

approach, to which he gave the greatest weight, erroneously used the sale of the subject property as one of the comparable sales. "The general rule as to such sales is 'that the purchase price set in the course of an arm's length transaction of recent vintage, if not explained away as abnormal in any fashion, is evidence of the "highest rank" to determine the true value of the property at that time' " (*W.T. Grant Co. v Srogi,* 52 NY2d 496, 511). The city's appraiser rejected the sale, concluding that it was not an arm's length transaction based largely upon a magazine article which stated that GAF Corporation (the seller) had been mismanaged and had to divest itself of some of its holdings. Petitioner's appraiser, on the other hand, testified as to his investigation into the circumstances of the sale, from which he concluded that it was an arm's length transaction, but only gave the sale some weight in arriving at his final opinion as to fair market value. The trial court concluded that the sale was entitled to some weight, and we see no error in this conclusion.

Next, we reject petitioner's argument that the trial court erred in including the value of the four film-coating machines. Petitioner bases its argument upon proof that, while the machines are very large, they can be removed from the buildings that house them by unbolting the component parts from each other and from the floors of the buildings. Accordingly, petitioner claims the machines are not taxable since they are "movable machinery" (Real Property Tax Law § 102 [12] [f]). The trial court viewed the four film-coating machines, two of which are two stories high and all of which exceed 300 feet in length. The buildings housing the machines have either brick masonry walls or walls of metal panels, and petitioner concedes that removal of some of the component parts would require removal of sections of the walls. There is, therefore, ample support in the record for the trial court's finding that the machines could not be removed without material injury to the buildings.

In conclusion, although our scope of review in nonjury cases is quite broad (*see, Arnold v State of New York,* 108 AD2d 102; *Koester v State of New York,* 90 AD2d 357, 363-364), we find no basis for disturbing the trial court's determination. As is clear from its decision, the trial court made its findings only after having carefully considered and weighed the parties' proof, including the conflicting testimony of the parties' experts, in light of the applicable legal principles. The order should, therefore, be affirmed.

Order affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.