*195
 
 OPINION OF THE COURT
 

 Smith, J.
 

 The issue here is whether petitioner has presented substantial evidence that its properties, which respondent Town of Geddes categorized as specialties, were overvalued. We hold substantial evidence exists that the four challenged properties were not specialties as a matter of law, and thus petitioner sufficiently overcame the presumption that respondents’ assessments were valid for the tax years at issue.
 

 Petitioner is a public utility company which owns and operates an electrical generation, transmission and distribution system in the Town of Geddes. Petitioner sought review of the tax assessments for approximately 23 parcels owned by it during the years 1990 through 1993. Petitioner conceded that the majority of its properties were specialties but took issue with such a categorization for four of those properties. In its appraisal of the alleged nonspecialty properties, petitioner used a “hybrid” method of valuation utilizing reproduction costs, income capitalization, and comparable sales.
 

 Supreme Court granted the petitions, concluded that the properties in dispute were not “specialties,” and reduced the assessments in accordance with the calculations of petitioner’s appraisers. The Appellate Division reversed and dismissed the petitions. The Court concluded that petitioner had “failed to overcome the presumption that respondents’ assessments were valid for the tax years at issue” (239 AD2d 911, 912). Since the
 
 *196
 
 presumption remained in effect, the Court found no need to “consider the adequacy of respondents’ appraisal or to inquire further into the value of the property.”
 

 The Appellate Division concluded that all of the parcels at issue were “specialty” properties which could not be valued by use of the comparable sales method. As to petitioner’s reproduction cost calculations for those properties properly categorized as specialties, the Court concluded that petitioner’s appraisal calculations were unreliable because the appraiser had accepted petitioner’s representations without conducting any independent investigation. The Court further concluded that “the use of straight-line depreciation did not yield
 
 ‘a
 
 fair and realistic value of the property involved’ * * * because it permitted petitioner’s appraiser to assign no value to property that remained in operation after passing its projected retirement date.” (239 AD2d, at 912.)
 

 We have held that a locality’s tax assessment is presumptively valid
 
 (Farash v Smith,
 
 59 NY2d 952, 955). However, a petitioner may overcome that presumption by bringing forth substantial evidence that its property has been overvalued
 
 (see, Matter of FMC Corp. v Unmack,
 
 92 NY2d 179 [decided today]). Substantial evidence is evidence grounded in objective data and sound theory
 
 (see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,
 
 45 NY2d 176, 179-181). In the context of a proceeding to challenge a tax assessment, substantial evidence will most often consist of a detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser.
 

 In the instant case, respondent’s tax assessment was premised upon its conclusion that the properties were specialties. A “specialty” property is one that “is
 
 uniquely
 
 adapted to the business conducted upon it or use made of it
 
 and
 
 cannot be converted to other uses without the expenditure of substantial sums of money”
 
 (Matter of Great Atl. & Pac. Tea Co. v Kiernan,
 
 42 NY2d 236, 240;
 
 see also, Matter of Allied Corp. v Town of Camillus,
 
 80 NY2d 351, 357;
 
 Matter of Saratoga Harness Racing v Williams,
 
 91 NY2d 639). This Court has articulated four criteria to determine whether a property is a “specialty”:
 

 “(a) the improvement must be unique and must be specially built for the specific purpose for which it is designed; (b) there must be a special use for which the improvement is designed and the improvement must be so specially used; (c) there must
 
 *197
 
 be no market for the type of property and no sales of property for such use; and (d) the improvement must be an appropriate improvement at the time of the taking or assessment and its use must be economically feasible and reasonably expected to be replaced”
 
 (Matter of Allied Corp. v Town of Camillas, supra,
 
 at 357).
 

 We have cautioned against an indiscriminate classification of property as a specialty and have stated that a property containing “special features” is not in all instances a speciality
 
 (Matter of Great Atl. & Pac. Tea Co. v Kiernan,
 
 42 NY2d, at 240). Indeed,
 

 “property does not qualify as a specialty where it possesses certain features which, while rendering the property suitable to the owner’s use, are not truly unique to his business but, in fact, make the property adaptable for general industrial use. Thus, if no great expense would be entailed in converting the property from the present owner’s use to other business and industrial uses and if a market value may be ascertained, property should not be valued as a specialty merely because it contains * * * features * * * which are not truly unique to the owner’s business”
 
 (id.,
 
 at 240).
 

 Where, however, a property is properly categorized as a specialty, a valuation of such property would not be based upon comparable sales since, by definition, there is no market for the property. Instead, the reproduction cost less depreciation approach is the appropriate methodology
 
 (Matter of Great Atl. & Pac. Tea Co. v Kiernan,
 
 42 NY2d 236, 240,
 
 supra; Matter of Saratoga Harness Racing v Williams, supra).
 
 Recognizing, though, that the reproduction cost method of valuation “may result in serious overvaluation of the property due to rising construction costs and its failure to adequately account for factors such as functional obsolescence and physical deterioration” (M
 
 atter of Great Atl. & Pac. Tea Co. v Kiernan,
 
 42 NY2d 236, 242,
 
 supra),
 
 we have concluded that it should be “utilized only in those limited instances in which no other method of valuation will yield a legally and economically realistic value for the property”
 
 (id.).
 

 In the instant case, the Appellate Division concluded that all of the parcels at issue were specialties. Petitioner challenged that determination as it related to four structures or sites.
 
 *198
 
 Structure/Site No. 1 was identified as the original power house and consisted of a two-story masonry building connected by an enclosed walkway to a one-story building. The Structure/Site measured 25,000 square feet and contained one or more offices, a garage or bay with a 12-foot overhead- door, a storage room, and a lounge. Various sections of this structure were used to house a repair shop and to store transformers. There was some evidence that almost half of the building was not accessible from the interior and had limited utility for some storage. Additionally, the site had service bays but no truck docks and lacked a usable elevator.
 

 Structure/Site No. 2 served as the electrical substation and consisted of a one-story, windowless, concrete block building measuring 1,300 square feet and consisting of concrete slab floors and steel beam and deck ceilings. The building houses electric monitoring equipment for the substation. Structure/ Sites No. 1 and No. 2 make up the Solvay substation.
 

 Structure/Site No. 3 consisted of a one-story, concrete block structure measuring 526 square feet which served as the natural gas regulatory station building and is also known as the Terry Road regulator station. The building was divided into two sections by an open corridor approximately six-feet wide. One section appeared to have been utilized as a storeroom and the other section was used for the regulation of gas lines. It was noted that the structure contained no visible connections for telephones, water, sewer or gas lines and its relatively small size and divided shape limited its utility.
 

 Structure/Site No. 4, a one-story concrete block structure measuring 203 square feet, served as a natural gas substation, and is also referred to as the State Fair substation. According to petitioner’s expert, the building was a single room filled with gas-regulating equipment and contained no connections for telephone, sewer, water or gas lines.
 

 While some of this evidence may indicate that the structures were specialties, petitioner also presented credible evidence to the contrary. The record shows that petitioner retained the services of experienced appraisers from three different organizations and received detailed appraisal reports from each. The documentary and testimonial evidence demonstrated that the sites were being used primarily for the storage of electrical equipment and were no longer operational. One of petitioner’s experts testified that both Structure/Site Nos. 1 and 2 were essentially used as office and storage space and
 
 *199
 
 Structure/Site No. 4, the natural gas substation, did not appear to contain any operational equipment throughout the years in question. Additionally, a fair reading of petitioner’s expert’s testimony, both on direct and cross-examination, supports the view that despite the presence of gas lines through certain buildings or under some of the flooring, petitioner’s operation of those lines was not dependent upon any function related to the operation of the subject buildings.
 

 Clearly, petitioner has provided substantial evidence, based on sound theory and objective data, that a credible dispute exists as to the proper characterization of its properties and consequently, the validity of its valuation methodology
 
 (see, Matter of FMC Corp. v Unmack,
 
 92 NY2d 179,
 
 supra
 
 [decided today]). As part of its over-all burden, petitioner must next demonstrate, by a preponderance of the evidence, that its properties do not fit within the defining characteristics of specialty property
 
 (see, Matter of Allied Corp. v Town of Camillus,
 
 80 NY2d 351, 357,
 
 supra).
 

 Finally, with respect to the remaining parcels constituting truly “specialty” property, we conclude that the Appellate Division erred in rejecting, as a matter of law, the valuation submitted by petitioner’s appraiser. Under the substantial evidence standard noted above, petitioner has met its threshold burden of supporting, by sound theory and objective data, its contention that there is a valid dispute regarding valuation. On remand, the lower court, in weighing the evidence and assessing the credibility to be given to the appraisal report, should examine the differing valuations based on the reproduction cost (new) less depreciation methodology.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division, Fourth Department, for consideration of issues raised, but not determined, on the appeal to that Court.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Levine and Ciparick concur; Judge Wesley taking no part.
 

 Order reversed, etc.