*185 OPINION OF THE COURT
Smith, J.
In these appeals, petitioners commenced proceedings under article 7 of the Real Property Tax Law to challenge tax assessments made upon their properties. The primary issue in both cases is whether petitioners have proffered sufficient evidence to rebut the presumption of validity of the tax assessments. *186 We conclude that in both cases, petitioners have met their burden of production and have brought before the court substantial evidence that a valid dispute exists concerning the current valuation of their properties. Therefore, in both cases, the orders of the Appellate Division should be reversed.
L

Matter of FMC Corp. v Unmack

Petitioner, Food Machinery and Chemical Corp. (FMC), sought review of property tax assessments for the years 1992 through 1994. The subject property was an industrial complex operating as a chemical processing plant and comprised of 15 buildings on a 12-acre site adjacent to the Niagara River in the Town of Tonawanda. To demonstrate the value of its property during the relevant years, petitioner offered market sales data of seven allegedly comparable properties in western New York, Pennsylvania and New Jersey.
Supreme Court discounted sale number seven as a comparable property, examined sale numbers one, two and five for “some guidance,” and relied upon sale numbers three, four and six as directly comparable. The court also took note of official New York State documents which listed the same sale price and valuation for the property that petitioner had argued was proper. Finally, the court made other calculations and findings regarding the valuations and arrived at an assessment which was lower than respondent’s assessment but higher than petitioner’s estimate.
The Appellate Division reversed and dismissed the petitions. The Court concluded that petitioner had failed to overcome the presumption that the assessments were valid and it, therefore, found no need to evaluate the adequacy of respondent’s appraisal. The Court rejected all of petitioner’s evidence of comparable sales because the appraiser “failed to account adequately for the unique features of the subject property in his selection and analysis of comparable sales” (242 AD2d 904, 905). As such, the Court concluded that petitioner had “failed to establish that the properties analyzed as comparable in its appraisal are sufficiently similar to the subject property to yield an accurate assessment of its value.” The Court also rejected petitioner’s alternate appraisal based upon the cost approach because it failed to “include the entire complex in the calculation of reproduction costs” and did not “account adequately for the calculation of depreciation.”

Matter of South Slope Holding Corp. v Board of Assessment Review

*187 Petitioners sought review of tax assessments involving four properties in 1989 and three properties in 1990. According to petitioners, the properties were originally purchased in order to develop a subdivision, but development could not progress because of sustained opposition from various local individuals and groups. It is alleged that since 1986 this campaign against petitioners’ use of the property created a “value-depressing cloud” or “blight” upon the land which detrimentally affected its marketability.
Supreme Court noted “that for whatever reason, the market for the property was depressed in the subject years” and sustained the petitions. In reversing, the Appellate Division dismissed the petitions and held that petitioners had failed to meet their burden of showing by substantial evidence that their property was overvalued, stating that the “appraiser for petitioners failed to set forth any objective data in his appraisal to support his opinion that the value of petitioners’ property was depressed due to an alleged ‘blight,’ and he was unable to testify to a value in the absence of blight” (244 AD2d 891, 892).
This Court granted petitioners’ leave to appeal.
IL
Our analysis begins with the recognition that a property valuation by the tax assessor is presumptively valid (People ex rel. Wallington Apts. v Miller, 288 NY 31, 33; Farash v Smith, 59 NY2d 952, 955) and thus “obviates any necessity, on the part of the assessors, of going forward with proof of the correctness of their valuation” (People ex rel. Wallington Apts. v Miller, 288 NY, at 33, supra). However, when a petitioner challenging the assessment comes forward with “substantial evidence” to the contrary, the presumption disappears (id.; Matter of Carriage House Motor Inn v City of Watertown, 136 AD2d 895, affd 72 NY2d 990).
While we have not defined the precise contours of “substantial evidence” in this context, we have held that, generally speaking:
“a determination is regarded as being supported by substantial evidence when the proof is ‘so substantial that from it an inference óf the existence of the fact found may be drawn reasonably.’ * * * [I]t means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact * * *. Essential attributes are rel *188 evance and a probative character * * *. In final analysis, substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically” (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 179-181).
The substantial evidence standard is a minimal standard. It requires less than “clear and convincing evidence” (Matter of Carriage House Motor Inn v City of Watertown, 136 AD2d 895, supra), and less than proof by “a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt” (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d, at 180, supra).
In the context of tax assessment cases, the “substantial evidence” standard merely requires that petitioner demonstrate the existence of a valid and credible dispute regarding valuation. The ultimate strength, credibility or persuasiveness of petitioner’s arguments are not germane during this threshold inquiry. Similarly, the weight to be given to either party’s evidence is not a relevant consideration at this juncture. Instead, in answering the question whether substantial evidence exists, a court should simply determine whether the documentary and testimonial evidence proffered by petitioner is based on “sound theory and objective data” (Matter of Commerce Holding Corp. v Board of Assessors, 88 NY2d 724, 732) rather than on mere wishful thinking. Though the substantial evidence standard is low, it “does not rise from bare surmise, conjecture, speculation or rumor” (300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra, at 180).
In the absence of “substantial evidence” to the contrary, the tax assessment should be upheld as presumptively valid. On the other hand, once petitioner has met its initial burden and rebutted the presumption of validity that attaches to the assessment, a court must weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued.
III.
We now turn to the appeals before us. In Matter of FMC Corp., the record demonstrates that petitioner met its burden *189 of overcoming the presumption of the validity of the assessments by substantial evidence. The “ultimate purpose of valuation * * * is to arrive at a fair and realistic value of the property involved” (Matter of Great Atl. & Pac. Tea Co. v Kiernan, 42 NY2d 236, 242; see also, Matter of Commerce Holding Corp. v Board of Assessors, 88 NY2d, at 729, supra). In this regard, we have stated that “[d] espite the difficulties of computing the market value of large industrial complexes, the market value method of valuation is preferred as the most reliable measure of a property’s full value for assessment purposes” (Matter of General Elec. Co. v Town of Salina, 69 NY2d 730, 731; see also, Matter of Great Atl. & Pac. Tea Co. v Kiernan, 42 NY2d, at 239, supra [“it is ‘market value’ which provides the most reliable valuation for assessment purposes”]). Indeed, “[t]he best evidence of value, of course, is a recent sale of the subject property between a seller under no compulsion to sell and a buyer under no compulsion to buy” (Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 356). However, where such evidence is lacking, courts have appropriately valued property by utilizing the comparable sales method, the capitalization of income method or the reproduction cost less depreciation method (id.).
With respect to the comparable sales method, market value may be determined with evidence of “recent sales of comparable properties” (Matter of General Elec. Co. v Town of Salina, 69 NY2d, at 731, supra). Comparable properties may even lie outside of the local market of the subject property when evidence indicates that a broad regional market exists (id., at 731; Matter of Great Atl. & Pac. Tea Co. v Kiernan, 42 NY2d, at 241-242, supra; Levin v State of New York, 13 NY2d 87, 92). By its very definition, a comparable sale need not be identical to the subject property. A comparable sale need only be “sufficiently similar to serve as a guide to the market value of the [subject] complex, notwithstanding differences between these comparables and the [subject] property” (Matter of General Elec. Co. v Town of Salina, 69 NY2d, at 732, supra; Matter of Great Atl. & Pac. Tea Co. v Kiernan, 42 NY2d, at 247, supra). In fact, and in accordance with the substantial evidence standard, “sound theory and objective data” may be used to adjust evidence of sales of comparable properties in order to more accurately reflect the market value of the subject property. Even evidence of past sales may need adjustment in light of any changes which may have taken place in the market for the property. As we have stated, “the assessment of property value for tax purposes must take into account any factor affecting a *190 property’s marketability” (Matter of Commerce Holding Corp. v Board of Assessors, 88 NY2d, at 729, supra).
In this case, the record demonstrates that petitioner employed the services of a licensed and experienced real estate appraiser'and broker. In appraising the property, that individual personally inspected the property, interviewed petitioner’s personnel, reviewed various publications and surveyed local real estate. A formal appraisal report, containing detailed descriptions and analyses of the property, was subsequently completed for each of the years at issue using the comparable sales method, the reproduction cost method and the income capitalization method. Petitioner’s expert relied primarily upon the comparable sales method and the appraisal report outlined, in a detailed and coherent manner, the attributes of seven facially comparable sites.
The appraisal report here was sufficient to meet petitioner’s initial burden to come forward with substantial evidence of a different yet credible valuation of its property and overcome the presumption of validity of respondent’s assessment. This threshold inquiry now complete, the Appellate Division is next authorized to weigh, as Supreme Court did in this case, the relative merits of the underlying data and conclusions drawn therefrom in order to determine which, if any, of the comparable sales suffice to prove, by a preponderance of the evidence, that petitioner’s valuation is the more accurate one.
In Matter of South Slope Holding Corp. v Board of Assessment Review, we also conclude that the petitioner met its minimal burden of overcoming the presumption of validity of the assessment with substantial evidence. It is true that some of the evidence was anecdotal. Nevertheless, we conclude that this evidence was sufficient to require the Appellate Division to analyze whether the ultimate burden of proving whether the property was overvalued had been met.
Petitioner asserted that various activities by community organizations and individuals created a blight upon the properties and such blight adversely impacted the market value of the properties. In support of its claim, petitioner tendered an appraisal report authored by an experienced and licensed real estate appraiser. The appraisal contained not only detailed information about the property, but it also examined the long and contentious history of the site. Note was made, through a lengthy historical chronology, of the hundreds of letters of complaints, numerous lawsuits and administrative hearings, *191 and negative publicity stemming from the opposition to development of the property. From this evidence, the appraiser concluded that the property had been devalued and assessed it accordingly.
Clearly, objective data exist indicating opposition to development of the land. Additionally, it is well within the realm of possibility that such organized resistance played some role in devaluing the land. This objectively reasonable conclusion, drawn by a competent and experienced appraiser, was based on credible evidence. Thus, substantial evidence existed in this case that the property was overvalued. Of course, petitioner has only satisfied its initial, threshold burden. The Appellate Division will next look to all of the evidence presented by the parties to see if petitioner demonstrated by a preponderance of the evidence that the property was overvalued.
In sum, while a petitioner’s proof must show by “substantial evidence” that its property has been overvalued, the standard is a minimal one. In order to rebut the presumption of validity of respondent’s assessment, petitioner need merely provide credible and competent evidence, usually in the form of a competent appraisal, that a valid dispute exists concerning the property’s valuation.
Accordingly, in Matter of FMC Corp. v Unmack, and in Matter of South Slope Holding Corp. v Board of Assessment Review, the orders of the Appellate Division should be reversed, with costs, and the matters remitted to the Appellate Division, Fourth Department, for consideration of issues raised, but not determined, on the appeals to that Court.
Chief Judge Kaye and Judges Titone, Bellacosa, Levine and Ciparick concur; Judge Wesley taking no part.
In each case: Orders reversed, etc.