■ In the Matter of BLUE HILL PLAZA ASSOCIATES, Appellant-Respondent, v ASSESSOR OF THE TOWN OF ORANGETOWN et al., Respondents-Appellants. [646 NYS2d 836] —In consolidated proceedings pursuant to RPTL article 7 to review real property tax assessments for the 1989/1990 to 1991/1992 tax years, the petitioner, Blue Hill Plaza Associates, appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Rockland County (Palella, J.), entered March 21, 1995, as limited the reduction of the petitioner's tax assessments for each of the tax years in question, and the Board of Assessors and Board of Assessment Review of the Town of Orangetown cross-appeal, as limited by their brief, from so much of the same judgment as granted a reduction of the petitioner's tax assessments.

Ordered that the judgment is modified, on the law and the facts, by deleting from the first decretal paragraph the following:

| "Year | Land | Total |
|-------|------|-------|
| "1990 | $14,000,000 | $95,202,974 |
| "1991 | $12,975,200 | $85,225,272 |
| "1992 | $13,536,600 | $91,472,981", |

and substituting therefor the following;

| "Year | Land | Total |
|-------|------|-------|
| "1990 | $14,000,000 | $65,563,957 |
| "1991 | $12,975,200 | $61,816,372 |
| "1992 | $13,536,600 | $67,702,520"; |

as so modified, the judgment is affirmed, without costs or disbursements.

Where, as here, valuation for assessment purposes is to be determined under RPTL 720 (2), the statute requires that "[t]he report of the referee and the decision or final order of the court finding the value of the property and the proper assessment thereof shall contain the essential facts found upon which the ultimate finding of facts is made". The trial court is limited to a judicial consideration of the evidence (*see, Matter of Four Seasons Fitness & Racquet Club v Assessor of Town of Amherst*, 212 AD2d 1025; *Shore Haven Apts. No. 6 v Commissioner of Fin. of City of N. Y.*, 87 AD2d 608, 608-609). Where the trial court increases the assessment value without explanation, it appears to arrive at its conclusion in an arbitrary manner and it is impossible to review the court's determination (*Matter of Four Seasons Fitness & Racquet Club v Assessor of Town of Amherst, supra; see also, Matter of Connecticut Mut. Life Ins. Co. v Srogi*, 101 AD2d 698; *Matter of Willowbrook Assocs. v Finance Adm'r of City of N. Y.*, 77 AD2d 901, 904; *Matter of Rice v Srogi*, 70 AD2d 764). Here, although the trial court stated several times in its decision that it was bound by the record in reaching its conclusions, it adjusted the property's value upward by $5,000,000 based on the fact that the court was "familiar with the subject property". The trial court's explanation that a "pragmatic adjustment * * * is therefore needed to adequately reflect the true market value of this unique property" is inadequate in light of the fact that, in their appraisals, the experts for both the petitioner and the Town of Orangetown (hereinafter the Town) recognized in their conclusions as to the value of the property, that whatever special characteristics the subject property had in the marketplace, no additional value was warranted. Accordingly, when the trial court adopted the highest of the experts' rents as the market rent for the property for each of the years under review pursuant to the income capitalization method, this accounted for whatever unique attributes the property had in the marketplace. Therefore, by adding an increment to the capitalized income value based solely on the physical attributes of the subject property, the trial court erred by double counting these attributes (*see, e.g., Matter of Werb v De Garmo*, 98 AD2d 957, *affd* 62 NY2d 636).

Furthermore, while it is true that the trier of facts is not

bound by even uncontradicted opinion testimony, its findings must be based on the evidence presented and not be the product of purely subjective judgment (*see, Matter of City of New York [A. & W. Realty Corp.]*, 1 NY2d 428, 432). Thus, the court's ultimate conclusion of value, as well as its findings on the various components that go into the capitalization process (e.g., the capitalization rate), must fall within the range of the evidence (*see, Shore Haven Apts. No. 6 v Commissioner of Fin. of City of N. Y.*, 93 AD2d 233, at 236). Here, the trial court's finding of total value, even before the addition of the $5,000,000 increment, was significantly higher than that found by either expert using the building residual straight line recapture method:

| Year | William Beckmann (expert for petitioner) | Kenneth L. Golub (expert for Town) | Court |
|------|------------------------------------------|-------------------------------------|-------|
| 1990 | $61,000,000 | $84,830,000 | $90,202,974 |
| 1991 | $56,000,000 | $69,335,000 | $86,956,487 |
| 1992 | $56,000,000 | $77,900,000 | $89,604,387 |

The court's figures as to potential gross income was higher than that found by either expert:

| Year | Beckmann | Golub | Court |
|------|----------|-------|-------|
| 1990 | $22,200,000 | $20,456,372 | $22,261,346 |
| 1991 | $22,200,000 | $19,854,714 | $22,261,346 |
| 1992 | $22,200,000 | $19,253,056 | $22,261,346 |

The court then applied a factor of 10% to account for vacancy and credit loss, which was not supported by the evidence and was inadequate given the uncontroverted proof that the market vacancy rate averaged 17% to 18% during the years under review. Furthermore, by applying a 10% vacancy factor against the potential gross income, the court adopted an effective gross income for each year that was even further outside the range established by the evidence:

| Year | Beckmann | Golub | Court |
|------|----------|-------|-------|
| 1990 | $18,204,000 | $18,410,735 | $20,035,211 |
| 1991 | $18,204,000 | $17,869,243 | $20,035,211 |
| 1992 | $18,204,000 | $17,327,750 | $20,035,211 |

The court was not free to disregard leasing commissions and tenant installations costs as items of expense when both

experts testified that a prudent investor would have made provision for them during the years under review (see, *Matter of Willowbrook Assocs. v Finance Adm'r of City of N. Y., supra,* at 903). By adopting a vacancy rate at variance with the proof and by ignoring expenses recognized by both experts as necessary to the operation of the property, the trial court ultimately arrived at net operating incomes that were substantially higher than those established by either expert:

| Year | Beckmann | Golub | Court |
|------|----------|-------|-------|
| 1990 | $9,843,600 | $11,827,000 | $14,035,212 |
| 1991 | $8,967,600 | $11,033,844 | $13,285,212 |
| 1992 | $8,487,600 | $10,492,351 | $13,035,212 |

"We are in accord with [the petitioner] that there is sufficient evidence in the record for this court to make new findings rather than order a time-consuming and expensive remand, and that at bar, justice is best served by that procedure. Petitioner['s] brief accurately, concretely and specifically sets forth and organizes the necessary data from the record, and [the petitioner] make[s] certain concessions, all of which justify the proposed modified findings set forth by [the petitioner] and obviate[s] the need for a remand" (*Matter of Willowbrook Assocs. v Finance Adm'r of City of N. Y., supra,* at 905).

### NEW FINDINGS

**Net Income Adjustments:** The error in the court's conversion of potential gross income to effective gross income was in the use of a 10% vacancy and collection loss factor. This had no support in the record, especially when combined with a market rental value of $18.50 per square foot. Both the subject building's actual vacancy rate, and the office vacancy rate in the market generally, averaged 17% to 18%. Recognizing, however, that the subject property's actual vacancy rate on the January 1, 1991, valuation date was 15.24%, the petitioner applies a 15% factor to cover vacancies *and* collection losses against the trial court's potential gross income of $22,261,346, which yields an effective gross income of $18,922,144 for each year.

**Corrected Expenses and Net Operating Income:** The average annual expense based on the figures used by Town's expert for the three years under review is $6,751,511, exclusive of leasing commissions and tenant work. Adding to that the

$1.20 per square foot average tenant installation cost at the subject building between 1985 and 1992, and the petitioner's expert's stabilized leasing commission of $.50 per square foot (multiplied by 1,203,000 square feet), adjusted expenses total $8,797,148. When subtracted from the corrected effective gross income, the modified net operating income is $10,124,996, or $10,125,000, rounded up to the nearest thousand.

**Corrected Finding of Value:** Using the court's land value, effective tax rates, recapture rate, and capitalization rates, the modified building residual calculations yield total values as follows:

| Year | 1990 | 1991 | 1992 |
|------|------|------|------|
| Total Value | $65,563,957 | $66,698,718 | $70,020,188 |

**Corrected Assessments:** At the stipulated equalization rates, the corrected assessments based on these modified values are:

| | |
|------|------|
| 1990 | $65,563,957 |
| 1991 | $61,816,372 |
| 1992 | $67,702,520 |

We find no merit to the issues raised on the cross appeal. O'Brien, J. P., Sullivan, Joy and McGinity, JJ., concur.