■ In the Matter of COUNTY OF ONONDAGA, Respondent, v BRUCE E. THORPE et al., Appellants, et al., Respondents. [667 NYS2d 541] —Appeal by Isabella F. O'Brien unanimously dismissed and judgment modified on the law and facts and as modified affirmed without costs in accordance with the following Memorandum: In 1988, defendant Bruce E. Thorpe (condemnee) acquired from his aunt, defendant Isabella F. O'Brien, an 11.29-acre parcel of land improved by a single-family residence located to the west of Howlett Hill Road in the Town of

Marcellus. O'Brien retained a life estate in the subject property.

In 1992, plaintiff, County of Onondaga (County), in connection with a highway reconstruction project, commenced an eminent domain proceeding to acquire title to a 286-foot strip of the property fronting on Howlett Hill Road, consisting of .106 acre. By order entered October 2, 1992, title to that strip of property was vested in the County. The condemnee and O'Brien filed a claim for direct damages of $25,000 and consequential damages of $200,000 arising from the acquisition. Before trial, O'Brien assigned her interest in the claim to the condemnee.

The condemnee testified that he acquired the subject property from his aunt with the intent to subdivide it for residential strip development after his aunt dies. The property is zoned R-1, and thus, residential strip development is permitted. The condemnee's engineering expert testified that such development would be consistent with the zoning ordinance and would be "the same usage as all of the surrounding properties".

The condemnee's appraiser testified that the highest and best use of the subject property at the time of the taking was residential strip development of 10 lots and that the highest and best use after the taking was its present use. The condemnee's appraiser and engineering expert testified that, before the taking, the property had usable access to Howlett Hill Road and that such access was eliminated after the taking because the County erected a guide rail. The erection of a guide rail was made necessary by the steepness of the slope between the widened roadway and the condemnee's property. Had the County acquired additional acreage, a more gradual slope could have been achieved and no guide rail would have been required. The condemnee's appraiser determined that the value of the subject property at the time of the taking, as corrected at trial, was $219,000. He concluded that the value of each of the nine unimproved lots was $15,000 and that the value of the lot with the existing one-family dwelling was $84,000. He further determined that the value of the subject property after the taking was $104,000. He rendered the opinion that the condemnee sustained direct damages of $1,850 and consequential damages of $113,150, for total damages of $115,000.

The County's appraiser determined that the highest and best use of the subject property before and after the taking is its present use as a "farmette", which he defined to be property improved by a single-family dwelling that has excess land available for small agricultural or recreational purposes. He

determined that the value of the subject property at the time of the taking was $100,000 and that its value after the taking was $99,500, based upon his valuation of the land at $5,000 per acre.

Supreme Court rejected both appraisers' determinations of the highest and best use of the subject property at the time of the taking and concluded that the highest and best use was for "potential residential strip development". The court further concluded that the installation of the guide rail "effectively cut off access from Howlett Hill Road" and that the County "failed to negate the obstruction of access". It determined that, although the condemnee is entitled to consequential damages by virtue of the guide rail, no award for those damages could be made because the condemnee, having based his values on an improper highest and best use, failed to offer proof upon which the court could base an award. The condemnee was awarded only direct damages of $530 for the taking.

Initially, we dismiss O'Brien's appeal from the judgment. O'Brien assigned her interest in the claim to the condemnee, and thus, she is not a party aggrieved by the judgment (*see, KTM Partnership-I v 160 W. 86th St. Partners,* 169 AD2d 462).

Upon our review of the record, we conclude that the court erred in determining that the highest and best use of the subject property at the time of the taking was for potential residential strip development. In support of his position that the highest and best use was residential strip development, the condemnee met his burden of demonstrating that "there is a reasonable probability that [residential strip development] could or would have been made within the reasonably near future" (*Matter of City of New York [Broadway Cary Corp.],* 34 NY2d 535, 536, *rearg denied* 34 NY2d 916; *see, Matter of City of New York [Dexter Motors—Wilson],* 21 AD2d 652, 653, *affd* 16 NY2d 814). Thus, valuation of the subject property based on comparable sales of residential strip developments is proper (*see, Lawyers Co-operative Publ. Co. v State of New York,* 45 AD2d 927; *Munro v State of New York,* 30 AD2d 1002). We agree with the court's finding that useable access to the roadway was eliminated by the guide rail and that the condemnee is entitled to an award of consequential damages. The court erred, however, in concluding that the condemnee failed to offer evidence upon which to base an award of consequential damages.

We need not remit the matter, however, because there is sufficient evidence in the record for this Court to make new findings (*see, Matter of Blue Hill Plaza Assocs. v Assessor of Town*

*of Orangetown,* 230 AD2d 846, 849, *lv denied* 89 NY2d 804). We find that the highest and best use of the subject property at the time of the taking was residential strip development. The only testimony concerning value before and after the taking based upon that use was offered by the condemnee's appraiser, who testified that the value of the subject property at the time of the taking was $219,000 and that the value after the taking was $104,000. That testimony was not seriously challenged on cross-examination. We find that the value before condemnation was $219,000 and that the value after condemnation was $104,000. Based upon those findings, we conclude that the condemnee is entitled to an award of direct damages of $1,850 and consequential damages of $113,150, and we modify the judgment by increasing the award of direct damages from $530 to $1,850 and by awarding consequential damages of $113,150. (Appeal from Judgment of Supreme Court, Onondaga County, Hurlbutt, J.—Condemnation.) Present—Green, J. P., Pine, Callahan and Fallon, JJ.