Matter of Reckson Operating Partnership v Assessor of Town of Greenburgh (2004 NY Slip Op 50153(U))

[*1]

Matter of Reckson Operating Partnership v Assessor of Town of Greenburgh

2004 NY Slip Op 50153(U)

Decided on March 19, 2004

Supreme Court, Westchester County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 19, 2004

Supreme Court, Westchester County
In the Matter of RECKSON OPERATING PARTNERSHIP, L.P., Petitioner, - -
against
THE ASSESSOR OF THE TOWN OF GREENBURGH and THE TOWN OF GREENBURGH, Respondents, -and-
IRVINGTON UNION FREE SCHOOL DISTRICT, Intervenor-Respondent.
Index Numbers: 15266/97
Appearances:

Gary Schuller, Esq.
Podell, Schwartz, Schlechter & Banfield LLP
Attorneys For Petitioner
605 Third Avenue
New York, N.Y. 10158
Susan Mancuso, Esq.
Town Attorney
Town of Greenburgh
177 Hillside Avenue
White Plains, N.Y. 10607
Judson Siebert, Esq.
Keane & Beane, P.C.
Attorneys For Irvington Union Free School District
1 North Broadway
White Plains, N.Y. 10601

THOMAS A. DICKERSON, J.
 THE TRUE VALUE OF 555 WHITE PLAINS ROAD
 
 By these proceedings, Petitioner, Reckson Operating Partners, L.P. ("Reckson") challenges the assessments on its property located at 555 White Plains Road, Tarrytown, New York, ("555 White Plains Road") imposed by the Respondents, the Assessor and the Town of Greenburgh [ " the Town " ] and the Irvington Union Free School District [ " the District " ], and seeks a reduction in the tax assessments on 555 White Plains Road as of the taxable status dates of June 1, 1997, June 1, 1998, and June 1, 1999.
The Nature Of The Property

 555 White Plains Road is designated on the tax maps of the Town as Volume 7, Section 25, Sheet 54, Lot P27/A-2-329A. The subject property was constructed in 1971, and is, approximately, 4.2 acres in size, consisting of a four story over lobby level office building of approximately 113,062+/- square feet, with an outdoor and under building parking area accommodating 357 vehicles.
The Assessor's Full Value Figures

 The assessments imposed upon 555 White Plains Road for each of the taxable status dates was $878,000. The stipulated equalization rate for each year was 7.54% (1997), 7.33% (1998), and 6.63% (1999). An application of the prevailing equalization rates to the $878,000 assessment yields the Assessor's full value figures of:
June 1, 1997 - $11,644,562 (at a 7.54% equalization rate)
June 1, 1998 - $11,978,171 (at a 7.33% equalization rate)
June 1, 1999 - $13,242,835 (at a 6.63% equalization rate)
The Petitioner's Full Value Figures

Petitioner's written appraisal report [ " the Petitioner's
Appraisal " ][ Trial Ex. 1 ] created by Beckmann Appraisals, Inc.
and the trial testimony of its expert, William R. Beckmann, MAI
[ " Beckmann " ], asserted that the value of 555 White Plains Road was:
Assessed ValueFull Value
June 1, 1997 $527,000 $7,000,000
[*2]
June 1, 1998 $593,730 $8,100,000
June 1, 1999 $643,110 $9,700,000
The Respondents' Full Value Figures
 Respondents' written appraisal report [ " the Respondents'
Appraisal " ][ Trial Exhibit A ] created by Lane Appraisals and
the trial testimony of their expert, Edward J. Ferrarone, MAI
[ " Ferrarone " ] of Lane Appraisals, asserted that the value of 555 White Plains Road was:
Assessed ValueFull Value
June 1, 1997 $864,084 $11,460,000
June 1, 1998 $932,376 $12,720,000
June 1, 1999 $899,691 $13,570,000
Overcoming The Presumption Of Validity
The Respondents argue that the Petitioner's evidence failed to rebut the presumption of validity of the assessments because Petitioner's Appraisal was not based upon standard and accepted appraisal techniques and, hence, did not meet the substantial evidence standard. A party seeking to overturn an assessment must first overcome this presumption of validity through the submission of substantial evidence [ See e.g., See Matter of FMC Corp. [Peroxygen Chems. Div.] v. Unmack, 92 NY2d 179, 187, 677 N.Y.S. 2d 269 (1998)( " ' In the context of tax assessment cases, the
'substantial evidence' standard merely requires that petitioner demonstrate
the existence of a valid and credible dispute regarding valuation.
The ultimate strength, credibility and persuasiveness are not germane
during this threshold inquiry...a court should simply determine whether the
documentary and testimonial evidence proffered by petitioner is based on
' sound theory and objective date' " ); Matter of Niagara Mohawk Power Corp.v
Assessor of the Town of Geddes, 92 NY2d 192, 196, 677, NYS 2d 275 (1998)
 ( "In the context of a proceeding to challenge a tax assessment, substantial evidence proof requires a detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser " )].
This Court finds that the Petitioner has submitted substantial evidence based upon "sound theory and objective data" consisting of an Appraisal and the testimony of Mr. Beckmann, and as [*3]such has demonstrated the existence of a valid dispute concerning the propriety of the assessments.
Having met its initial burden, the Petitioner must prove, through a preponderance of evidence, that the assessments are excessive. The Court has considered and evaluated the weight and credibility of the evidence submitted to determine whether the Petitioner has proven that the assessments are excessive.
The Selected Valuation Methods
 Both Petitioner's and Respondents'experts, Mr. Bechmann and Mr. Ferrarone, utilized the income-capitalization approach [FN1] to value the subject property. Mr. Ferrarone also used the sales-comparison approach [FN2]
by analyzing 8 sales during the period December 1, 1997 to December 24, 1999 [FN3]. The results of Mr. Ferrarone's comparable sales were averagedwith the results of his income-capitalization analysis to reach an overall conclusion of value.
 Sales Comparison Approach Is Inapplicable Without Income Data 
 The Court rejects the sales-comparison approach used by Mr. Ferrarone. This is not to say that the sales-comparison approach or any other approach which is adequately supported by the record cannot be used to value real property in tax assessment proceedings. However, without a detailed understanding of the income and expenses of the proposed comparable sales, there is no factual basis for concluding that such sales are in fact comparable to 555 White Plains Road. Both Mr. Beckmann and Mr. Ferrarone agreed that a buyer of income producing property purchases an income stream.
As stated in The Appraisal of Real Estate (12th ed.), Appraisal Institute, Chicago, Ill., 2001, at 419-420, " The sales comparison approach usually provides the primary indication of [*4]market value in appraisals of properties that are not usually purchased for their income producing characteristics. These types of properties are amenable to sales comparison because similar properties are commonly bought and sold in the same market. Typically, the sales comparison approach provides the best indication of value for owner-occupied commercial and industrial properties. Buyers of income-producing properties usually concentrate on a property's economic characteristics. Thoroughly analyzing comparable sales of large, complex, income-producing properties is difficult because information on the economic factors influencing the decisions of buyers is not readily available from public records or interviews with buyers and sellers.
For example, an appraiser may not have sufficient knowledge
of the existing leases applicable to a neighborhood shopping center that is potentially comparable to the subject. Property encumbered by a lease is a sale of rights other than fee simple rights and requires knowledge of the terms of all leases and an understanding of the tenant(s) occupying the premises. Some transactions include sales of other physical assets or business interests. In each instance, if the sale is to be useful for comparison purposes, it must be dissected into its various components. Even when the components of value can be allocated, it must be understood that because of the complexity of the mix
of factors involved, the sale may be less reliable as an
indicator of the subject's real property value ".
Mr. Ferrarone acknowledged that the Respondents' Appraisal contained no financial or other economic data for any of his comparable sales. Without information on the most crucial aspect of comparability, the income stream, his sales comparison approach will be given no weight
[ See e.g., Matter of Blue Hill Plaza Associates v. Assessor of Town of Orangetown , Sup. Ct. Rockland Co., Index Nos. 5093/90 et al., Slip Op. dated December 23, 1994 (n.o.r.), mod. 230 AD2d 846, 646 N.Y.S. 2d 836 (2d Dept.1996), lv. den. 89 NY2d 804 (1996); Taxter Park Associates v. Assessor of Town of Greenburgh , Sup. Ct. West. Co., Index Nos. 16189/96 et al., Slip Op. dated October 8, 1996 (n.o.r.)].
The Income Capitalization Approach
The Petitioner and the Respondents agree, and so does this Court, that the income capitalization approach is the proper method to value the subject property [ See e.g., The Appraiser's of Real Estate, supra, at 472; Matter of Blue Hill Plaza Associates, supra; Taxter Park Associates supra.] There are, however, significant differences between the Petitioner's Appraisal and the Respondents' Appraisal and they include (1) the determination of a market rent, (2) the calculation of income and expenses and (3) the selection of an appropriate capitalization rate.
The Petitioner's Market Rent

[*5] Mr. Beckmann adopted a market rent by analyzing the property's leases and the leases of comparable nearby properties. [ i.e., $22.00 per square foot in 1997, $23.00 per square foot in 1998, and $24.00 per square foot in 1999 ]. These rents include a factor of $2.25 per square foot for the provision of electricity to the tenants.
The Respondents' Market Rent 
 Mr. Ferrarone adopted the actual reported income, including escalation payments for all space occupied on the respective taxable status dates. Mr. Ferrarone added a market rent for all space vacant on the taxable status dates to derive a potential gross income at full occupancy each year. His market rent was $21.00 per square foot in 1997, $22.00 per square foot in 1998, and $23.00 per square foot in 1999.
The 505 White Plains Road Comparable Is Misleading
 After reviewing Petitioner's Appraisal, the Court calls into question the comparables used, particularly the property located at 505 White Plains Road. Mr. Beckmann conceded at trial that 505 White Plains Road, because of its age, condition, its position in the market and physical attributes, is considered an average class A-B office building. Mr. Beckmann agreed that this building could not be considered a true class A building due to its limited public areas, lack of elevator, and the fact that its tenants are of limited credit worthiness. In addition, 505 White Plains Road is only a two-story, 26,000+/- square foot structure, with limited public areas. 555 White Plains Road is (1) comprised of 113,062+/- square feet, (2) four stories high, (3) serviced by two elevators, (4) contains significant public areas, and (5) leased to credit worthy tenants. Three of Mr. Beckmann's eleven rental comparables are from 505 White Plains Road. However, when Mr. Beckmann adjusts his comparables to reconcile their differences with 555 White Plains Road, he does not make any adjustments for the differences between 505 White Plains Road and 555 White Plains Road.
The Missing Tenants And Leases
[*6]
Mr. Beckmann omits reference to the leases belonging to four tenants, i.e., Xerox at 27,963 square feet; Kane Miller at 3,050 square feet; the Café at 27,785 square feet; and Paddington Properties at 2,105 square feet, totaling 35,903 square feet or 29% of 555 White Plains Road. Mr. Beckmann, further, conceded that (1) for 1998 he had no rental information for 30% of the building, (2) he had no information for certain tenants in 1997 and (3) he failed to account for certain tenants in 1999.
One Rent Role Too Late
The only rent roll that appears to factor into Mr. Beckmann's analysis is a rent roll as of December 1, 2002, a period three-and-a-half years after the last taxable status date of June 1, 1999. That rent roll contains only one tenant that was under lease during the years at issue.
Petitioner's Market Rent Analysis Worthy Of Minimal Weight
It is evident that Mr. Beckmann's figures derived from a clearly dissimilar building [ 505 White Plains Road ] cannot be relied upon for purposes of determining a "market rent" for 555 White Plains Road. His omissions of crucial leases and rent rolls greatly detract from the reliability of his analysis. Accordingly, Mr. Beckmann's market rent analysis will be given minimal weight by this court.
Respondents' Market Rent Analysis Worthy Of Great Weight
 Mr. Ferrarone valued 555 White Plains Road as it exists, as a modern, Class A office building, with ample parking. Mr. Ferrarone adopted the actual reported income, as of each of the valuation dates, based on the rent rolls and rental summaries, including leases from 555 White Plains Road, within roughly six months of the valuation dates of June 1, 1997, June 1, 1998, and June 1, 1999. In order to determine the market rent level for a space such as the subject property, Mr. Ferrarone included several comparable rentals, all of which are located in similar Class A corporate office buildings in the subject's market area [FN4].
 From a review of these comparables it is clear that they represent the market for the [*7]type and location of space such as the subject property. Mr. Ferrarone's market rent analysis, based on actual leases, rent rolls, and rental summaries from 555 White Plains Road along with several similar comparables, is reliable and will be accorded great weight. 
Vacancy Rates & Credit Losses
Petitioner asserts that the property's gross annual income
[ " GAI " ] should reflect an annual deduction for vacancy and credit losses of 20% for 1997, 15% for 1998 and 15% for 1999 while Respondents assert that the GAI should reflect such losses in an annual amount of 10% for each of the three years.
 In his analysis of the vacancy condition for the subject property, Mr. Beckmann relies only upon data for 1999. He supplies no explanation for the omission of the earlier years that were unaffected by the vacancies created during the time 555 White Plains Road was being reconfigured to accommodate a new tenant, Bayer Corporation. To offer market support for his vacancy rates of 20%, 15% and 15% for 1997, 1998, and 1999, respectively, Mr. Beckmann uses 1999 and 2000 data from two other Reckson buildings, one of which is 505 White Plains Road. Mr. Beckmann inappropriately used the same vacancy rates for the same period for 505 White Plains Road, an admittedly inferior building, with tenants of limited credit worthiness who occupy smaller spaces.
The Petitioner's Vacancy Rates Are Too High
 
 At trial, Mr. Beckmann conceded that the actual occupancy rates for 555 White Plains Road were over 90% for June 1997, 94% for June 1998, and 103.58% for June 1999, even though Petitioner's Appraisal uses vacancy rates of 20% for June 1997, 15% for June 1998, and 15% for June 1999. The BOMA Experience Exchange Report relied upon by Mr. Beckmann shows vacancy rates of approximately 9.5% for the Westchester County, West I-287 market.
The Respondents' Vacancy Rates Are Reasonable
The Court finds that Respondent's use of an annual figure of 10% is more realistic and well supported by the history of the property and the overall market conditions. Mr. Beckmann's use of 20%, 15%, and 15% respectively is far too high and seems to have been chosen arbitrarily, particularly when he adopts the identical rates for the subject premises that he used in his prior appraisal of 505 White Plains Road, which is a risky, smaller, class A-B office building. Accordingly, the Court accepts 10% for each of the subject years as the appropriate vacancy and credit loss rate.
Expenses: Leasing Commissions
Both Mr. Beckmann and Mr. Ferrarone included leasing commissions as an expense, but Mr. Ferrarone adopted an annual charge of $.50 per square foot as a stabilized expense. Mr. Beckmann included this as part of his combined annual charge of $2.50 per square foot for both leasing commissions and tenant installation costs. 
Expenses: Tenant Improvement Costs
Petitioner asserts that tenant improvement expenses [ " TI " ] should be deducted as operating expenses in calculating net operating income
[ " NOI " ] while the Respondents assert that TI should be deducted from the value of the property after the NOI has been divided by the capitalization rate. As to the treatment of this expense the Court holds that TI should be deducted as operating expenses rather than treated as capital improvements as Respondents contend. As stated in The Appraisal of Real Estate, supra, at p. 508, "Furthermore, tenant improvements on a new building are usually capital expenditures while TIs in an existing space being retenanted are usually an expense." Respondents argue, however, that another passage on p. 509 of The Appraisal of Real Estate, supra, supports their position, i.e., "tenant improvements and leasing commissions are the most common line items recorded below the net operating income line." This passage indicates that tenant costs are the most common "below the line" item, but only where it is appropriate in the particular situation to treat them as such. That is clearly not the case here.
TI Will Be Treated As An " Above The Line " Expense
 Tenant improvement costs are a recognized expense for space being re-tenanted in a building that, like the subject property, is well into its economic life span. On a stabilized basis over the course of an investment an owner would recognize the need to fund tenant work and meet these expenditures when they arise [FN5]. The only case cited by Respondents, Matter of CCB Associates v. Penale, 266 AD2d 805, 698 N.Y.S. 2d 382 (4th Dept. 1999), deals with expenditures for a complete retrofit of the space rather than ordinary tenant improvement costs. In CCB Associates, supra, the court found that the vacant second floor of the building was unrentable without the retrofit since it lacked windows, walls or finished ceilings. However, in the context of ordinary turnover in a multi-tenant office building such as 555 White Plains Road, courts have recognized tenant-installation costs as an ongoing expense to be deducted from income as part of the capitalization process [ See Matter of Blue Hill Plaza Assoc., supra and [*8]Taxter Park Assoc., supra.[FN6] ].
Selecting An Appropriate Capitalization Rate
Mr. Beckmann utilized the upper end of the Korpacz National Suburban Office Buildings data [ " Korpacz Data " ] for the appropriate capitalization rate, choosing 11% for 1997, 10.5% for 1998 and 10.5% for 1999. The lowest end of the Korpacz Data for each year in question was 7.5%. Mr. Beckmann explained that his choice of capitalization rates was based upon the fact that 555 White Plains Road was 26 years old as of June 1, 1997, the first taxable status date, and the building did not contain fire sprinklers. However, Mr. Beckmann admitted that 555 White Plains Road was an average class A office building, efficiently managed and well maintained. He acknowledged that it could command market rents above the average rents reported for buildings in the same geographic area. Nevertheless, he used the same capitalization rate that he used in his earlier appraisal of 505 White Plains Road, a class A-B building occupied by limited credit worthy tenants. He described 505 White Plains Road as a risky investment and 555 White Plains Road as a well-run entity, yet he ascribed the identical capitalization rates to each property, reflecting higher investment risk and lower value to both properties. This Court rejects Mr. Beckmann's use of the same "maximum risk" capitalization rates for 555 White Plains Road that he used for 505 White Plains Road and finds that a capitalization rate closer to the low end of the Korpacz Data is far more appropriate for such a stable, class A building.
The Electricity Adjustment
Petitioner's expenses included a $2.25 per square foot allowance for the provision of electricity to the entire building. Mr. Beckmann adjusted the utilities expense by $140,000 a year to account for the cost of a landlord providing electricity to all tenant areas of the subject building. Mr. Beckmann asserted that his adjustment was necessary because the actual electric expense understated this item on a fee simple basis since about one-half of the space was direct metered for electricity.
 Respondents argue that Mr. Beckmann's electrical adjustment is not supported by the data he uses in Petitioner's Appraisal. Mr. Beckmann increased the actual electric expenses from $2.10 per square foot to $3.53 per square foot, a 68% increase. Mr. Beckmann's adjustments for the other years are of a similar magnitude. However, the increases are not supported by any data Mr. Beckmann presents. He even concedes that his $3.53 figure grossly exceeds his "market data" cited in the Boma survey, which cites electric costs ranging from $2.07 to $2.51 per square foot. Mr. Beckmann asserts that the figures he adopted reflect the higher utility rates in the area, [*9]but he fails to describe the area to which he refers and how and why those figures differ from the BOMA survey buildings. Consequently, this Court accepts the actual electric expenses used by Mr. Ferrarone, finding them to be far more reliable.
Management Fees And Capital Replacement Costs
Additional differences between the two experts included Mr. Beckmann's allowance of 5% of effective gross income as a management fee while Mr. Ferrarone used 4% of effective gross income. Both experts also include as an expense a reserve for the replacement of capital items, but Mr. Beckmann used 2% of the effective gross income and Mr. Ferrarone used 1.5%. The Court accepts Mr. Ferrarone's figures of 4% and 1.5% as reliable.
The True Value Of 555 White Plains Road
The range of testimony supports the following:
The Proper Income & Operating Expenses
 1997 1998 1999
Estimated Gross $2,407,495 $2,522,349 $2,787,125
 Annual Income
Vacancy and Credit Loss(10%) $240,750 $252,235 $278,713
Effective Gross $2,166,745$2,270,114 $2,508,412
 Annual Income

Total Expenses $1,070,472$1,046,347 $1,018,501
Net Operating Income $1,096,273 $1,223,767 $1,489,911
Capitalization Rate12.49%12.28% 12.20%
Fair Market Value $8,777,206 $9,965,529 $12,212,385
Rounded FMV $8,800,000 $10,000,000 $12,200,000
The Proper Assessed Values

 Applying the respective equalization rates [ i.e., 7.54%, 7.33% and 6.63%], to the indicated fair market values produces the indicated assessed values as follows:
RateYearAssessed Value 
7.54%1997$663,520
7.33%1998$733,000
6.63%1999$808,860
The Ordered Reduction
 The amounts and percentages of reduction for each year are as
 follows:
YearAmountPercentage
1997 $214,48024.42%
1998$145,00016.51%
1999$69,140 7.88%
 The petitions, with costs (RPTL 722[1]), are sustained to the extent indicated above, the assessment rolls are to be corrected accordingly, and any overpayments of taxes are to be refunded with interest.
 The foregoing constitutes the Court's findings of fact and conclusions of law.
Dated: White Plains, NY
[*10] March 19, 2004
 HON. THOMAS A. DICKERSON
 Supreme Court Justice
TO:
Gary Schuller, Esq.
Podell, Schwartz, Schlechter & Banfield LLP
Attorneys For Petitioner
605 Third Avenue
New York, N.Y. 10158
Susan Mancuso, Esq.
Town Attorney
Town of Greenburgh
177 Hillside Avenue
White Plains, N.Y. 10607
Judson Siebert, Esq.
Keane & Beane, P.C.
Attorneys For Irvington Union Free School District
1 North Broadway
White Plains, N.Y. 10601
ENDNOTES
Decision Date: March 19, 2004
Footnotes

Footnote 1: The Appraisal of Real Estate, (12th ed.), Appraisal Institute, Chicago, Ill., 2001, at 472-474. 

Footnote 2: The Appraisal of Real Estate, (12th ed.) Appraisal Institute, Chicago, Ill., 2001, at 419-421.

Footnote 3: . Mr. Ferrarone's comparable sales are as follows:
 December 1, 1997 - 120 White Plains Road, Tarrytown, NY.;
 April 21, 1998 - 140 Grand Street, White Plains, NY.;
 December 29, 1998 - 399 Knollwood Road, Greenbugh, NY.;
 March 29, 1999 - 440 and 450 Mamaroneck Avenue, Harrison, NY.; August 31, 1999 - 10 Bank Street, White Plains, NY.; December 15, 1999 - 244 Westchester Ave., Harrison, NY.;
 December 15, 1999 - 2975 Westchester Ave., Harrison, NY.;
 December 24, 1999 - 2 and 4 Gannett Drive, Harrison, NY.

Footnote 4: These comparables are as follows:
 120 White Plains Road, Greenburgh, NY (Dannon Co.);
 565 Taxter Road, Greenburgh, NY (Cityscape Corp.);
 555 White Plains Road, Greenburgh, NY (Cityscape Corp.);
 565 Taxter Road, Greenburgh, NY (Resource Mortg. Bkg.);
 555 Taxter Road, Greenburgh, NY (Fuji Photo Film USA);
 200 Tarrytown-White Plains Road, Greenburgh, NY (First Franklin Financial);
 555 Taxter Road, Greenburgh, NY (American Home Assur. Co.);
 565 Taxter Road, Greenburgh, NY (Discovery Zone);
 565 Taxter Road, Greenburgh, NY (M. Kamenstein, Inc.);
 555 White Plains Road, Greenburgh, NY (Bayer Corp.).

Footnote 5: Petitioner interestingly points out that the New York City Tax Commission's income and expense form TC 201 includes as an operating expense a line item for amortized leasing and tenant improvement costs to be deducted before the calculation of net operating income. 

Footnote 6: Both of these cases relied on The Appraisal of Real Estate, (12th ed.), Appraisal Institute, Chicago, Ill., 2001, at 508-509 for their conclusions regarding the treatment of tenant improvement costs.